(No. 33461.—

FRANCES PTASZEK *et al.*, Appellees, *vs.* JOSEPH KONCZAL, *et al.*, Appellants.

*Opinion filed November 23, 1955*

ROMAN E. POSANSKI, of Chicago, (WILLIAM O. KROHN, and CHARLES D. SNEWIND, of counsel,) for appellants.

WILLIAM S. KLEINMAN, SAMUEL L. NORRIS, and JOSEPH L. HERR, all of Chicago, for appellees.

Mr. CHIEF JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook County setting aside a deed from Maryanna Konczal to her son Joseph Konczal and his wife, Bernice, ordering the real estate, as intestate property, partitioned among the heirs of said Maryanna Konczal, and directing Joseph Konczal to account. A freehold being involved, the defendants appeal directly to this court.

The property involved herein consists of a three-story brick building containing six apartments and a small cottage on the rear of the lot. It was acquired in 1914 by Maryanna Konczal and her husband, Michael, who took title as joint tenants. Mr. and Mrs. Konczal paid $9800 for the property, and the husband, who was employed in the building trade, made numerous improvements thereto so that at the time of the trial the property had a value of approximately $25,000. Michael Konczal died in 1943, and the title to the property thereby vested solely in Maryanna Konczal.

In 1946, Maryanna Konczal consulted her attorney, Abdon M. Pallasch, one of the defendants herein, and asked for advice about how to dispose of her property. At that time she was in good health, and it was undisputed that she had sufficient mental capacity to deal with her property. After considerable discussion, Pallasch prepared a deed in trust which conveyed the property to Mrs. Konczal's son, Joseph Konczal, as trustee.

By the terms of the deed in trust, the trustee was given full power to improve, sell, encumber and lease the property, and a general power to deal with it in all ways as it would be lawful for any person owning the same to deal with it. This deed was duly executed by Mrs. Konczal, acknowledged before Pallasch and recorded in the office of the recorder of deeds. At the same time a trust agreement and declaration of trust was executed by Joseph Konczal, the terms of which were agreed to by Mrs. Konczal. It was provided therein that Joseph held the property in trust for Mrs. Konczal during her lifetime, reserving to her the power to dispose of the beneficial interest thereof. It was further provided that upon the death of Mrs Konczal an undivided $\frac{1}{13}$ interest in the rents and profits accruing from the real estate was to vest in each of six of the children of Mrs. Konczal and one of her grand-

children; and a $\frac{2}{13}$ interest was to vest in each of three other children of Mrs. Konczal. Joseph was in the group given $\frac{2}{13}$ interest. It was provided by said trust agreement that the interest of the beneficiaries was personal property and that none of them had any right, title or interest in the real estate as such. The trustee was to deal with this real estate only when authorized to do so in writing and agreed that he would, on the written direction of Maryanna Konczal or of the beneficiaries, make deeds conveying said property. The trust was to terminate, in all events, after twenty years, the trustee being directed to then sell the property at public sale and divide the proceeds among the beneficiaries as their interests appear in the trust agreement.

Mrs. Konczal also executed, at the same time, a will in which it was recited that she had already disposed of her real estate through a conveyance in trust and a trust agreement. The will provided that the household furniture should be divided among her children and gave directions as to the payment of medical and funeral expenses from the proceeds of a joint bank account and a small insurance policy.

In 1949, the trust agreement was amended so as to provide that Joseph Konczal, following the death of his mother, was to receive a $\frac{1}{2}$ beneficial interest and each of the other ten children and grandchildren was to receive a $\frac{1}{20}$ beneficial interest. The validity of this amendment is not challenged in the present case and there is no evidence that Mrs. Konczal was lacking in mental capacity at that time.

In June of 1950, Maryanna Konczal became seriously ill. She complained of severe, constant headaches and ran a high temperature. The family doctor ordered her taken to the hospital, and she remained there for about two weeks. Although there is some conflict in the medical testimony as to the exact nature of her illness, all of the doctors who

testified agreed that she was very sick and could have been suffering from a brain infection. After returning home, Mrs. Konczal was still attended by a doctor twice a week. Shortly thereafter, her condition became worse, and she was again taken to the hospital. After nine days in the hospital, she was, at her own request, returned to her home, although no improvement was noted in her condition. But she remained home only a few days, being taken to another hospital and again suffering with a high fever and delirium. After ten days at this hospital she was taken home in an ambulance. After another brief stay at home she was removed to yet another hospital, suffering from the same ailments. After about two weeks, she was again taken home, where she remained until April 23, 1951. On that date, she had another severe attack and was rushed to the hospital. She died the following day.

From the beginning of her illness in June 1950 to the date of her death in April 1951, Mrs. Konczal was in five hospitals for various periods of time and was attended by eight different doctors. It was during this period of time, on December 21, 1950, that the deed in question was executed. According to the testimony of the defendant Abdon Pallasch, Mrs. Konczal requested him to come to her home. She told Pallasch that she wanted to give the property to her son Joseph and his wife, Bernice. She also told Pallasch that she had borrowed $1500 from one of her daughters and she wanted to make sure that this daughter was going to get that much from the real estate. She also wanted Joseph to pay certain amounts to the rest of his brothers and sisters after her death. Pallasch then prepared a letter of instructions by which Mrs. Konczal instructed her son Joseph, who at that time held the title to the property as trustee, to convey the same to her. A trustee's deed was prepared by which Joseph conveyed the property to his mother and a warranty deed was prepared by which Mrs. Konczal conveyed the property to Joseph

and Bernice, reserving a life estate in herself. After these documents had been prepared, Pallasch explained them to her in the Polish language, since Mrs. Konczal was unable to speak, read or write English. All of these instruments were then executed by Mrs. Konczal and Joseph. In order to provide for the payment of the sums of money to Mrs. Konczal's other children, Joseph and his wife executed a trust deed to Pearl M. Pallasch, the wife of the defendant, Abdon Pallasch, to secure the payment of nine notes, seven in the sum of $100, one note for $300 and a note for $1500. The notes were in payment of the sums that Mrs. Konczal wanted her children to have.

At this time Mrs. Konczal also executed a will, witnessed by the defendant Pallasch and his son, in which her entire estate was given to Joseph, who was appointed executor. The will recited that Mrs. Konczal had already conveyed her real estate to her son Joseph and his wife, Bernice, and had made provision for the payment of certain monies secured by a trust deed.

There was also executed at the same time an escrow agreement which provided that the trust deed and the notes should be held by Pallasch in escrow for the benefit of the children of Mrs. Konczal and should not be delivered to them until one year after Mrs. Konczal's death. This escrow agreement was executed by Mrs. Konczal, Joseph and Bernice, and was accepted by Pallasch.

Mrs. Konczal died on April 24, 1951. On May 1, 1951, Pallasch wrote to each of her children and requested that they come to his office. In response to this letter all of the children appeared at the office, and Pallasch informed them of the various documents executed on December 21, 1950, which placed the title in Joseph and provided that the rest of the children were to receive varying amounts of money as their sole benefit from the estate of their mother. Pallasch told them that was all they were going to get, and if they would mark the notes "Paid" and sign

a release they would receive their money right then. None of the other members of the family were represented by counsel at that meeting and, acting upon what Pallasch told them, they signed the receipts. Joseph gave each of them the money in payment of the notes with the exception of the one daughter who was to receive $1500. He said he did not have that much money at the time and she would have to wait a while. The children agreed that Rose Grabowski, one of the defendants herein and one of Mrs. Konczal's children, should receive more than the share given her by Mrs. Konczal, so they each agreed to give her an additional $25 out of the money they received.

The children who received the nominal amounts were dissatisfied, and soon after the meeting in Pallasch's office retained counsel. And after some negotiations between their counsel and Pallasch, which accomplished no results, the present action was filed. Plaintiffs sought to set aside the December deed from Mrs. Konczal to Joseph and asked that Joseph and Bernice should be made to account for all of the rents and profits received by them. Plaintiffs also sought a partition of the property and requested that the court declare that the trust deed executed by Joseph and Bernice on December 21, 1950, should be held null and void and ineffectual as a lien on the property. Plaintiffs further sought to enjoin the defendant, Joseph Konczal, from taking any action to admit the December will to probate. The defendants requested a jury trial and the cause was heard by the court and jury. At the request of the parties, special interrogatories were submitted to the jury. The answers made by the jury to these interrogatories may be summarized as follows:

Joseph and Bernice Konczal did not exercise good faith in their dealings with Maryanna Konczal in December 1950, and Joseph Konczal violated his fiduciary duty to his ·mother. Maryanna Konczal, in December 1950, did not have sufficient mental capacity to execute the deed to

Joseph and did not understand the terms and effect of the various documents which were executed at that time. All of the documents executed in December 1950, were prepared as a result of the undue influence or betrayal of confidence of the defendants Joseph Konczal, Bernice Konczal, and Abdon Pallasch. Joseph Konczal, Bernice Konczal, and Abdon Pallasch were guilty of fraudulent misrepresentation and concealment of material facts at the time of the meeting in Pallasch's office in May 1951.

The decree of the trial court confirmed and approved the answers to the special interrogatories and ordered the December deed set aside, ordered a partition of the property, directed Joseph and Bernice Konczal to account to the plaintiffs for the rents, issues and profits received by them, but refused to grant an injunction to restrain the probate of the December will. This decree treated the property as intestate property. It also included a provision holding Pallasch jointly liable with Joseph.

Because of the complexity of the facts, it has been necessary to state them in considerable detail. However, we are of the opinion that the law applicable to the case is well settled and will not require extended discussion. The evidence establishes that Mrs. Konczal, at the time of the execution of the deed in question, had been suffering with a serious illness for almost six months. She had been in the hospital three times under the care of several different doctors and was suffering from severe and constant headaches, accompanied by a high fever. Her physical condition deteriorated so that from the beginning of her illness to the time of her death she lost almost 80 pounds. At the time she was in the hospital in September she was in a state of delirium and unable to recognize her children. After she was taken home from the hospital in September she was confined to her bed. During all of the period of her illness she complained of severe headaches, and at times could not carry on a normal conversation. One of

the doctors diagnosed Mrs. Konczal's condition as an inflammation of the dura and the pia, which is the covering of the brain. Another doctor testified that in September he examined Mrs. Konczal at the hospital and found her in a semicoma. This doctor found a weakness on the left side of her face and in her left arm, which he said was indicative of damage to the motor area of the right side of the brain. He was satisfied that Mrs. Konczal had sustained damage to her brain.

The jury specifically found that Mrs. Konczal did not have sound mind and sufficient mental capacity to execute the deed of December 21, 1950, and did not understand the terms and effect of the various documents she executed on that date. We are convinced from a review of the record that these findings of fact, adopted by the court, are amply supported by the evidence and are not so palpably contrary to the weight of the evidence as to justify our disturbing them. (Cf. *Dombrow* v. *Dombrow*, 401 Ill. 324.) Having decided that the trial court properly held Mrs. Konczal lacking in mental capacity to execute the deed, it is not necessary to consider the question of undue influence.

Defendants, however, insist that even if the December deed was invalid, plaintiffs are in no position to complain because they accepted the nominal sums which were paid to them at the meeting in Pallasch's office after Mrs. Konczal's death. They claim that by accepting these sums plaintiffs are estopped from denying the validity of the instrument under which the benefits are derived. The doctrine of estoppel has no application in this case. Before a party can claim benefit of an estoppel there must be conduct which was calculated to mislead him. This conduct must have been relied upon to the detriment of the person claiming the benefit of it, and such party must have been ignorant of the true facts. (*Malloy* v. *City of Chicago*, 369 Ill. 97.) Tested by this rule we find that defendants are in

no position to urge the doctrine of estoppel. Plaintiffs made no representations upon which defendants relied. On the contrary, as found by the jury, Joseph, Bernice, and Pallasch were each guilty of fraudulent misrepresentations and concealment of material facts on the occasion of the meeting at Pallasch's office. The haste with which Pallasch and Joseph called the meeting, the fact that none of the other children were represented by counsel at that time, and the fact that they were urged to sign releases and accept the money immediately, in spite of the fact that Pallasch had agreed with Mrs. Konczal he would hold the trust deed and notes in escrow for a year after her death, certainly give rise to a suspicion that Joseph and Pallasch (who was at that time acting as Joseph's attorney) were seeking to fortify the December deed by a supposed estoppel.

But the court erred in finding that the title to the premises upon Mrs. Konczal's death thereby vested in her heirs-at-law. For having determined that she lacked mental capacity to execute the deed of December 21, 1950, it follows (and the jury so found) that she lacked mental capacity to execute the writing which directed Joseph to reconvey the trust property to her. Under these facts, if one deed is void, both deeds are void. Therefore, since no issue as to the validity of the trust agreement was raised in this case, the court was incorrect in ordering partition and an accounting for rents and profits. While Joseph has a duty to account, this obligation arises from his position as trustee under the trust agreement, and not by reason of his collecting the rents and profits under the void deed of December 21, 1950.

Further, we find no evidence in the record to support the finding against Pallasch. There is not even a suggestion that Pallasch received any of the rents and profits, and there is no evidence to support a theory that he joined Joseph in a conspiracy to defraud Mrs. Konczal.

One question remains for discussion. Plaintiffs urge, in a cross appeal, that the trial court erred in refusing to enjoin the probate of the December will. We are of the opinion that this action of the trial court was proper.

If Joseph should seek to probate said will and plaintiffs oppose such probate, they have a clear and adequate remedy under the statute providing for will contests. The right to contest a will is not cognizable by a court of equity in the exercise of its ordinary equitable jurisdiction, but is purely statutory. (*Handley* v. *Conlan,* 342 Ill. 562.) Such a proceeding may be instituted only after the will has been admitted to probate. (Ill. Rev. Stat. 1953, chap. 3, par. 242.) To permit a court of equity to enjoin the probate of a will would circumvent the statute.

On this record then, the deed of December 21, 1950, was properly set aside because of lack of mental capacity on the part of Maryanna Konczal. And because of the invalidity of the deed from Joseph to Mrs. Konczal, also executed on that date, the interests in the property remained as under the prior trust instrument, as amended. Any accounting under the trust, or any credit Joseph may claim (properly or improperly, considering his conduct) for money paid at the meeting in Pallasch's office, is not in issue here. Finally, there is no evidence to support the finding against Pallasch, and the court was correct in refusing to enjoin probate of the will.

The decree is affirmed in part and reversed in part; the cause is remanded with directions to enter a decree in conformity with this opinion.

*Affirmed in part and reversed in part,*
*and remanded with directions.*