151 Ill. App.3d 21 (1986)
502 N.E.2d 739
JOHN E. WASHBURN, Director of Insurance as Rehabilitator for United Savings Life Insurance Company, Plaintiff-Appellant,
v.
UNION NATIONAL BANK AND TRUST COMPANY OF JOLIET, Defendant-Appellee.
No. 3-85-0434.
Illinois Appellate Court  Third District.
Opinion filed December 18, 1986.
*22 Lisa A. Hausten, of Sidley & Austin, of Chicago, and Murphy, Timm, Lennon, Spesia & Ayers, of Joliet (Henry L. Mason III, of counsel), for appellant United Savings Life Insurance Company.
*23 John J. Cassidy, Jr., and Alan E. Lapidus, both of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellant John E. Washburn.
Joseph R. Lundy and Michael L. Brody, both of Schiff, Hardin & Waite, of Chicago, and Eugene Shutts and Robert Shutts, both of Shutts & Shutts, of Joliet (J. Mark Fisher, of counsel), for appellee.
Judgment affirmed.
JUSTICE BARRY delivered the opinion of the court:
The debtor-insurance company appeals from summary judgment entered in the circuit court of Will County in favor of the creditor-bank in an action for wrongful liquidation of collateral securing a loan.
Plaintiff, United States Savings Life Insurance Company (the company), borrowed large sums of money from defendant, Union National Bank and Trust Company of Joliet (the bank), on a regular basis beginning in 1981. The loans were for varying lengths of time  always less than a year and were routinely renewed. Because of the close personal relationship between the chairman of the bank and the president of the company, the bank accomplished each renewal by filling in blank note forms previously signed by the company president. In late 1983 the company began to experience financial problems, and a new president took charge. In June of 1984, shortly before loans totalling $1,200,000 were due to mature, the company sought to have its loans increased to $2,500,000. That request was denied by the bank. The loans remained unpaid while the company sought other sources of financing. About two weeks after the loans were due, the bank sold the "Ginnie Mae" bonds (issued by the Government National Mortgage Association) which had been the collateral securing those loans. The sale was accomplished without prior notice to the company. Because Ginnie Mae bonds pay out principal as well as interest on a monthly basis, the amortized value carried on the books of the company was greater than the market price at the time of sale. As a result, the capital of the company was impaired.
When plaintiff company learned that the bonds were being sold, it sought a temporary restraining order (TRO) against the bank. The bank informed the trial court that the bonds had been delivered to the buyer in New York, and so the petition for a TRO was withdrawn. The company filed suit against the bank to recover damages resulting from the allegedly wrongful sale of the bonds without prior notice. Defendant bank's motion for summary judgment was granted by the trial court, and the company has perfected this appeal. The record on appeal includes 22 volumes of depositions.
*24 Plaintiff contends that the trial court erred in entering summary judgment because of several issues of material fact which should be submitted to the trier of fact at trial. Specifically, plaintiff asserts that there is a dispute as to (1) whether the notes were in default or, in the alternative, (2) whether the bank was estopped or waived default, (3) whether the sale of collateral was commercially reasonable, and (4) whether the bank acted in good faith in dealing with plaintiff.
There is no dispute that the loans totalling $1,200,000 became due on June 30, 1984, and that the company had not executed any blank notes for renewal of those loans prior to the maturity date. Furthermore, there is no dispute that the bank sent the company a notice (labelled "a friendly reminder") stating that the loans were past due. The company, nonetheless, insists that the bank actually did renew the loan in keeping with prior practice, and, in support of that contention, the company refers to a statement in the minutes of the bank officers' loan committee meeting on June 18, 1984, as follows:
"Loans maturing from June 26, 1984 through July 2, 1984 were presented, and the rates and renewals approved."
That entry was explained by bank officers as indicating that the pricing analysis of the maturing loans was approved  i.e. the recommended interest rates to be charged if the loans were renewed  but that the actual decision as to whether a loan would be renewed was made by the loan officer, not by the committee. It seems clear from the depositions that the loan officer, John Lynch, did not take any formal action renewing the loans in question.
 1 We note that the company does not offer any evidence contradicting the bank's explanation of those minutes but simply argues that the plain language of the minutes is sufficient to create an issue of fact. However, such is not the case. The statement contained in the minutes of the loan committee is consistent with the testimony of the bank's witnesses, and no issue of fact exists as to renewal.
 2 The company also argues, in the alternative, that there is a question of fact as to whether the bank was estopped to liquidate the collateral without prior notice or whether any default was waived because of the bank's consistent course of dealing with the company in the past whereby the loans were renewed almost "automatically." In order to establish estoppel, the company must show that it was induced to change its position to its detriment in reliance on words or conduct amounting to a misrepresentation or concealment of a material fact. (Ptaszek v. Konczal (1955), 7 Ill.2d 145, 130 N.E.2d 257.) There is nothing in the record here to indicate that the company changed its position in reliance on anything the bank did or said. *25 There had been conversations between officers of the bank and the company concerning the cash needs of the company, but the bank did not make any express or implied promise to extend the due date or to renew the loans. In a similar situation in Huggins v. Central National Bank (1984), 127 Ill. App.3d 883, 886, 469 N.E.2d 302, 305, the court said, "The failure to demand immediate payment when plaintiff said he would pay at a later date is not the type of conduct that could reasonably be expected to induce a debtor to rely on his security not being sold."
While it is true that in the past the loans were renewed with regularity, a number of circumstances were different in June of 1984. For one thing, a new president had taken over the company so that a close personal relationship no longer existed between the top officers of the company and the bank. Secondly, the company had come upon difficult financial times and was desperately in need of additional cash. The company did not formally request renewal of the $1,200,000 loans and did not sign any blank notes for use in renewal but rather requested an increase in the company's line of credit to $2,500,000. When the bank denied the request, the company informed the bank that it would seek alternative financing elsewhere. The company did begin negotiating with other financial institutions, and the bank was informed of this activity. It seems clear that neither party could reasonably have expected the previous course of dealing to continue as before. By the time the notes became due, the prior relationship had been altered, and the company acknowledged that fact in its communications with the bank. Under these facts, we agree with the trial court that the essential elements of estoppel were not established by the company.
 3 Similarly, the bank's conduct and statements did not constitute a waiver of its rights as secured lender. Waiver is the intentional abandonment or relinquishment of a known right. (Vermilion County Production Credit Association v. Izzard (1969), 111 Ill. App.2d 190, 249 N.E.2d 352.) Here the bank never expressly waived its rights under default, and certainly inaction by the bank did not constitute an implied waiver of its rights as a secured lender. In order to establish an implied waiver, there must be a clear, unequivocal, and decisive act of a party showing such a purpose. (Kane v. American National Bank & Trust Co. (1974), 21 Ill. App.3d 1046, 316 N.E.2d 177.) No such act was present here. The trial court correctly entered summary judgment in favor of the bank on the issues of estoppel and waiver.
The company's next contention is that the liquidation of the collateral without notice to the company was not "commercially reasonable" *26 as required by section 9-504(3) of the Uniform Commercial Code (Code) (Ill. Rev. Stat. 1985, ch. 26, par. 9-504(3).) Section 9-504(3) provides, in part:
"Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. * * * Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale."
Section 9-507(2) further defines "commercially reasonable" as follows:
"If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner." Ill. Rev. Stat. 1985, ch. 26, par. 9-507(2).
 4 It is clear from the depositions in the record that Ginnie Mae bonds are customarily sold on a recognized market. It is not disputed that the bank followed the usual procedure in arranging the sale of the bonds in this case. Bids were solicited from three leading brokerage firms, and the best price was accepted. The company does not claim that the bonds were sold at less than the market price or that the sale was not accomplished through regular market channels but instead insists that it was entitled to prior notice. The Uniform Commercial Code has consistently been construed to mean that notice is not required where commercial reasonableness is established. (M.E. Hersch v. Citizens Savings & Loan Association (1983), 146 Cal. App.3d 1002, 194 Cal. Rptr. 628; Marine Midland Bank-Rochester v. Vaeth (1976), 88 Misc.2d 657, 388 N.Y.S.2d 548.) Since the bank complied with the requirements of the Uniform Commercial Code, quoted above, we must agree with the trial court that the bank was entitled to summary judgment on this issue.
The final question is whether the bank acted in good faith. The company cites section 1-203 of the Uniform Commercial Code, which provides:
"Every contract or duty within this Act imposes an obligation *27 of good faith in its performance or enforcement." (Ill. Rev. Stat. 1985, ch. 26, par. 1-203.)
Similarly, the court has said:
"There can not be any doubt that a covenant of fair dealing and good faith is implied into every contract absent express disavowal. This rule has been codified in the law of sales and negotiable instruments [citation], and is a part of our common law heritage." Foster Enterprises, Inc. v. Germania Federal Savings & Loan Association (1981), 97 Ill. App.3d 22, 28, 421 N.E.2d 1376.
 5 We have been cited no cases holding that the obligation of good faith can alone be the basis for recovering money damages. To the contrary, it has been held that allegations of failure to act in good faith in the performance of duties arising under section 1-203 of the Code do not state a claim for relief. (Chandler v. Hunter (Ala. App. 1976), 340 So.2d 818.) In other words, section 1-203 is directive, rather than remedial, and is implemented by such provisions as the "commercially reasonable" requirement of section 9-507(2). Having found that the sale of collateral here was commercially reasonable within the meaning of the Code, we cannot say that, nonetheless, the sale violated the bank's duty of good faith. (Cf. M.E. Hersch v. Citizens Savings & Loan Association (1983), 146 Cal. App.3d 1002, 194 Cal. Rptr. 68.) There is no lack of good faith in acting as authorized by the Code. Ocean National Bank v. Odell (Me. 1982), 444 A.2d 422.
The company relies upon Alaska Statebank v. Fairco (Alaska 1983), 647 P.2d 288, 291, where the failure of the creditor to give notice before taking possession of a store and its inventory was held to be a violation of the duty of good faith under the Code. Unlike the case at bar, the court in Alaska Statebank held that the creditor had waived its right to seize the collateral when it continued to negotiate the due dates for payments under the contract. In its most recent proposal for granting an extension for repayment, the creditor had stated that the offer would expire at 1 p.m. on November 8, 1978, but then, at 8 p.m. on November 6, the creditor took physical possession of the debtor's store. Thus there was both waiver and lack of good faith on the part of the creditor. In the case before us, the communications between the company and the bank did not involve negotiations for renewal or extension of the past due notes. The company was, in fact, seeking other sources of financing, and the bank did not do anything to prevent the company from going elsewhere for its credit needs.
Another case relied upon by the company, K.M.C. Co. v. Irving *28 Trust Co. (6th Cir.1985), 757 F.2d 752, involved a contract whereby Irving Trust agreed to provide financing for K.M.C., a wholesale grocer, up to the maximum line of credit established by the contract. When Irving Trust later refused to advance funds in an amount which would not exceed the line of credit, and which left K.M.C. without operating capital, the court found that the contractual obligation of good faith required a period of notice to allow K.M.C. a reasonable opportunity to seek alternative financing. The factual situation in the K.M.C. Co. case is plainly distinguishable from the case at bar.
Here the conduct of the bank complied with the requirements of the Code, and under the circumstances, that was sufficient to satisfy the bank's obligation to act in good faith. Accordingly, we affirm the judgment of the trial court.
Affirmed.
STOUDER and WOMBACHER, JJ., concur.