These appeals are from a summary judgment in favor of AmSouth Bank, N.A. ("AmSouth"), defendant and counterplaintiff, and against Government Street Lumber Company, Inc. ("Lumber Company"), plaintiff, and D.W. Blacksher, Jr., plaintiff and counter-defendant. We affirm.
 CASE NO. 87-1164
Lumber Company and Blacksher ("plaintiffs") present three issues for review. *Page 70 
 "Issue One
"Did the Trial Court err in granting AmSouth's Motion to Strike the Amended Complaint?"
The case was filed by the plaintiffs on March 13, 1987. AmSouth filed a motion to dismiss on April 3, 1987. Plaintiffs began discovery by serving two sets of interrogatories and a request for production on April 7, 1987. In April and May 1987, AmSouth took the depositions of Lumber Company's officers and witnesses. On May 4, AmSouth responded to the second set of interrogatories; on June 30, it responded to the request for production of documents; and, on July 17, it responded to the first set of interrogatories. AmSouth's motion to dismiss was denied, and it filed an answer and a motion for summary judgment on August 21, 1987. Before the motion could be heard, counsel for the plaintiffs filed a motion for leave to withdraw. On October 29, new counsel appeared for the plaintiffs through a Rule 56(f), A.R.Civ.P., affidavit in response to the motion for summary judgment, requesting an opportunity to conduct further discovery before AmSouth's motion for summary judgment was submitted. When the motion for summary judgment was set for oral argument, counsel for the parties agreed that discovery would be completed in 90 days; and the trial court permitted AmSouth to defer its motion for summary judgment until the expiration of the 90-day discovery period. In November 1987, the case was set for trial on January 11, 1988. In December and January, the plaintiffs took the depositions of certain AmSouth employees. On January 4, 1988, the case was removed from the trial docket to allow the trial court to consider AmSouth's motion for summary judgment. On January 6, the plaintiffs filed their "Opposition to Motion for Summary Judgment," with supporting material; and the motion for summary judgment was orally argued and submitted on that date. The trial court directed AmSouth to file a brief in support of its motion, which was filed within seven days of that date. The plaintiffs were to file their brief in opposition within ten days after the filing of AmSouth's brief. The plaintiffs obtained two extensions on grounds that more time was needed to prepare their brief. On January 29, the plaintiffs filed a brief and an amended complaint, a motion to defer submission of the motion for summary judgment, and a motion to compel AmSouth to produce documents. AmSouth moved to strike the amended complaint, objected to the motion to defer submission of the motion for summary judgment, and responded to the motion to compel. On February 19, the plaintiffs filed an affidavit of Blacksher in opposition to the motion for summary judgment. On June 10, the trial court granted AmSouth's motion to strike the amended complaint and granted AmSouth's motion for summary judgment.
In this issue, the plaintiffs complain of the trial court's striking of their amended complaint.
In Alabama Farm Bureau Mutual Casualty Insurance Co. v.Guthrie, 338 So.2d 1276, 1279 (Ala. 1976), this Court said:
 "Under Rule 15, the trial judges must be given discretion to allow or refuse amendments. This Court has held that amendments are to be freely allowed and that their refusal must be based on a valid ground. Liberality of amendment does not include a situation where the trial on the issues will be unduly delayed or the opposing party unduly prejudiced."
The trial court did not abuse its discretion in striking the amendment to the complaint under the facts hereinbefore set out. See Robinson v. Kierce, 513 So.2d 1005 (Ala. 1987);Arfor-Brynfield, Inc. v. Huntsville Mall Associates,479 So.2d 1146 (Ala. 1985); Metropolitan Life Ins. Co. v. Sullen,413 So.2d 1106 (Ala. 1982); Alabama Farm Bureau Mutual CasualtyInsurance Co. v. Guthrie, supra; Burge v. Jefferson County,409 So.2d 800 (Ala. 1982); Stead v. Blue Cross-Blue Shield ofAlabama, 294 Ala. 3, 310 So.2d 469 (1975).
 "Issue Two
"Did the Trial Court err in granting AmSouth's Motion to Strike [Plaintiffs'] Motion to Compel Answers to Discovery, and *Page 71 
in granting AmSouth's Objection to [Plaintiffs'] Motion to Defer Submission of Motion for Summary Judgment?"
On January 6, 1988, when the motion for summary judgment was orally argued and submitted, there was no motion to compel AmSouth to produce or to further answer interrogatories propounded by the plaintiffs, nor was there a motion to defer submission.
In Reeves v. Porter, 521 So.2d 963, 965 (Ala. 1988), we wrote:
 "The mere pendency of discovery does not bar summary judgment. If the trial court from the evidence before it, or the appellate court from the record, can ascertain that the matter subject to production was crucial to the non-moving party's case (Parrish v. Board of Commissioners of Alabama State Bar, 533 F.2d 942 (5th Cir. 1976)) or that the answers to the interrogatories were crucial to the non-moving party's case (Noble v. McManus, 504 So.2d 248 (Ala. 1987)), then it is error for the trial court to grant summary judgment before the items have been produced or the answers given. However, the burden of showing that these items are crucial is upon the non-moving party. He can do so by complying with Rule 56(f), Ala.R.Civ.P., Water View Developments, Inc. v. Eureka, Inc., 512 So.2d 916 (Ala. 1987). Rule 56(f) provides: 'Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.' A pending motion to compel production (Parrish, supra) and a motion to compel answers to interrogatories, which has been granted (Noble, supra) when the evidence before the court clearly shows that the evidence sought is crucial to the non-moving party's case, have been held sufficient compliance with Rule 56(f). However, when no such crucial evidence would be supplied by the production or by the answers to the interrogatories, it is not error for the trial court to grant summary judgment with discovery pending. Wallace v. Brownell Pontiac-GMC Co., 703 F.2d 525 (11th Cir. 1983); Noble v. McManus, supra. In Wallace, Judge Kravitch noted: 'Most, if not all, cases involving a Rule 56(f) issue will be factually dissimilar. For this very reason, a blanket rule would be inappropriate.' 703 F.2d at 528. The burden is upon the non-moving party to comply with Rule 56(f) or to prove that the matter sought by discovery is or may be crucial to the non-moving party's case."
The plaintiffs did not comply with Rule 56(f) or prove that the matter sought by discovery was or might be crucial to the plaintiffs' case. We will not hold that a trial court abuses its discretion in not compelling discovery when the motion to compel is filed after a motion for summary judgment has been argued and submitted.
A motion to defer submission of a motion for summary judgment filed after the submission of that motion for summary judgment is not timely filed, and a trial court will not be held to have committed reversible error in failing to grant such a motion.
 "Issue Three
"Did the Trial Court err in granting AmSouth's Motion for Summary Judgment?"
Unfortunately, the plaintiffs did not argue each count of the complaint separately. There is no way for us to properly review this issue without addressing each alleged cause of action. We have attempted to ascertain the plaintiffs' argument as to each separate cause of action. In Count One, the plaintiffs seek to recover for a breach of duty of fair dealing and good faith. In Count Two, they seek to recover for a wanton breach of duty of fair dealing and good faith. In Count Three, they seek to recover for business interference. In Counts Four and Five, the plaintiffs allege wrongful control and domination. In Count Six, they seek to recover for negligence. *Page 72 
 Counts One and Two
Plaintiffs refer us to an article entitled "Banking Malpractice" by A. Barry Cappello in the September-October 1986 edition of Case and Comment, and urge us to follow StateNational Bank of El Paso v. Farah Mfg. Co., 678 S.W.2d 661
(Tex.Ct.App. 1984) ("Farah"), and K.M.C. Co. v. Irving Trust Co.,757 F.2d 752 (6th Cir. 1985) ("K.M.C."), which are discussed in that article. We declined to follow K.M.C., supra, in PavcoIndustries, Inc. v. First National Bank of Mobile,534 So.2d 572, 577 (Ala. 1988).
Alabama Code 1975, § 7-1-203, does not create a substantive cause of action in tort. Brown-Marx Associates, Ltd. v.Emigrant Savings Bank, 527 F. Supp. 277 (N.D.Ala. 1981), aff'd,703 F.2d 1361 (11th Cir. 1983) (cited with approval in Harrellv. Reynolds Metals Co., 495 So.2d 1381, 1388 (Ala. 1986));Kennedy Electric Co. v. Moore-Handley, Inc., 437 So.2d 76 (Ala. 1983). Brown-Marx, supra, is similar to the case at issue; both arise from a claim that a bank breached a commitment to lend money. This Court stated in Harrell v. Reynolds Metals Co., supra:
 "[w]e are not prepared to extend to the area of general contract law the tort of bad faith that we have recognized in the context of insurance policy cases."
495 So.2d at 1388.
There was no error in the trial court's entering the summary judgment as to claims in tort for an alleged breach of the duty of good faith.
Neither does § 7-1-203 support a claim in contract. InChandler v. Hunter, 340 So.2d 818, 821 (Ala.Civ.App. 1976), the Court of Civil Appeals addressed the question of whether this Code section created a cause of action:
 "The second count of the complaint appears to allege a cause of action arising from defendants' failure to deal in good faith as required by Title 7A, Section 1-203, supra. That section states:
 "'Every contract or duty within this title [Commercial Code] imposes an obligation of good faith in its performance or enforcement.'
 "Failure to act in good faith in the performance or enforcement of contracts or duties arising under Title 7A does not state a claim for which relief may be granted in Alabama."
The reasoning in Chandler v. Hunter, supra, is that § 7-1-203
is directive rather than remedial; and this interpretation, while refuted by Reid v. Key Bank, 821 F.2d 9 (1st Cir. 1987), has support from other courts that have interpreted this provision of the Uniform Commercial Code. See ManagementAssistance, Inc. v. Computer Dimensions, Inc., 546 F. Supp. 666
(N.D.Ga. 1982), aff'd 747 F.2d 708 (11th Cir. 1984); State v.DeAnza Corp., 416 So.2d 1173 (Fla.Dist.Ct.App. 1982); Washburnv. Union National Bank Trust Co., 151 Ill. App.3d 21, 104 Ill.Dec. 242, 502 N.E.2d 739 (1986); Super Glue Corp. v. AvisRent-A-Car System, Inc., 132 A.D.2d 604, 517 N.Y.S.2d 764
(1987). This Court has impliedly adopted this reasoning inHarrell v. Reynolds Metals Co., supra; and Kennedy Electric Co.v. Moore-Handley, Inc., supra. In Pavco Industries, Inc. v.First National Bank, supra, we held that §§ 7-1-203 and 7-1-208 did not support a cause of action for breach of the obligation of good faith in the context of a demand note. In doing so, we declined to follow Reid v. Key Bank, supra (the only case that we have found that has criticized the holding in Chandler v.Hunter, supra), and K.M.C., supra, which are two cases that Lumber Company and Blacksher present in their brief as authority for permitting a cause of action in contract for breach of the obligation of good faith and fair dealing.
We expressly adopt the reasoning of the Alabama Court of Civil Appeals in Chandler v. Hunter, supra, that failure to act in good faith in the performance or enforcement of contracts arising out of Title 7A does not state a claim for relief that may be granted in Alabama, since § 7-1-203 is directive rather than remedial.
Assuming that we followed the rationale of Reid v. Key Bank, supra, which we do not, even then we could not reverse the summary judgment as to Count One, the count that alleges a contract action for *Page 73 
failure to act in good faith, because, for purposes of §7-1-203,[1] " '[g]ood faith' means honesty in fact in the conduct or transaction concerned." Alabama Code 1975, § 7-1-201(19).
There is no evidence of dishonesty in fact on the part of AmSouth employees. All those things that the plaintiffs claim AmSouth did that were so egregious were things either specifically permitted or not prohibited under the financing agreement that Lumber Company and its lawyer agreed to in 1983. Under that agreement, AmSouth had a right to monitor Lumber Company's accounts receivable; to require deposits into the "blocked" account; to disqualify accounts from the lending base; to lend no more than required under the financing agreement; to ask for proceeds from the plywood antitrust litigation on which it had a valid lien; and to dishonor checks drawn on insufficient funds. "The obligation to act in good faith does not bar a party from enforcing whatever legal rights he possesses. In the name of good faith, a party cannot be required to forego or surrender a right that he otherwise possesses." Rigby Corp. v. Boatmen's Bank Trust Co.,713 S.W.2d 517, 535 (Mo.App. 1986). There is not a scintilla of evidence (this action was filed prior to June 11, 1987; see Code 1975, § 12-21-12) that AmSouth acted dishonestly in fact, in the performance, or in the enforcement, of the financing agreement.
The trial court did not err in entering AmSouth's summary judgment as to Counts One and Two.
 Count Three
Plaintiffs allege that AmSouth "prevented and interfered with the lawful and proper conduct of [Lumber Company's] business and affairs." In support of this, they cite Gross v. LowderRealty Better Homes Gardens, 494 So.2d 590 (Ala. 1986);Marion v. Hall, 429 So.2d 937 (Ala. 1983); Sparks v. McCrary,156 Ala. 382, 47 So. 332 (1924); United States Fidelity Guaranty Co. v. Millonas, 206 Ala. 147, 89 So. 732 (1921);Frank Coulson, Inc. Buick v. General Motors Corp., 488 F.2d 202
(5th Cir. 1974); State National Bank v. Farah Mfg.,678 S.W.2d 661 (Tex.Ct.App. 1984); and, Melamed v. Lake County NationalBank, 727 F.2d 1399 (6th Cir. 1984).
In Gross v. Lowder Realty Better Homes Gardens, supra, Justice Adams wrote for the Court:
 "[W]e announce a new rule in this state broad enough to encompass both interference with business relations and interference with contractual relations, and which also expands the cause of action for interference with contractual relations so as to incorporate the majority rule. We hold that this tort of intentional interference with business or contractual relations, to be actionable, requires:
 "(1) The existence of a contract or business relation;
 "(2) Defendant's knowledge of the contract or business relation;
 "(3) Intentional interference by the defendant with the contract or business relation;
 "(4) Absence of justification for the defendant's interference; and
 "(5) Damage to the plaintiff as a result of defendant's interference.
 "We have set forth above what we consider to be the broad framework of the cause of action, but defer to future cases a determination of the more detailed questions that undoubtedly will be raised as the cause of action moves from its formative stages and develops into a solidified body of law. We are of the opinion, however, that the principles set out above will provide a workable and sufficiently flexible standard by which to guide the future development of the cause of action."
494 So.2d at 597.
It is unclear from the complaint what business relationship AmSouth allegedly interfered with. From plaintiffs' brief, we *Page 74 
find that the basis of this claim was "wrongful interference by AmSouth with the internal management of" Lumber Company.
As a party to the contract and to the business relationship with Lumber Company, AmSouth cannot, as a matter of law, be liable for tortious interference with that contract or business relationship. Lolley v. Howell, 504 So.2d 253 (Ala. 1987);Hickman v. Winston County Hospital Board, 508 So.2d 237 (Ala. 1987); and Harrell v. Reynolds Metals Co., supra.
The trial court did not err in granting AmSouth's summary judgment as to this count.
 Counts Four and Five
It is alleged in Counts Four and Five that AmSouth "wrongfully controlled and dominated [Lumber Company's] business and affairs from 1985 through February, 1987" so that in Count Four, AmSouth "is therefore [alleged to be] strictly liable for all losses and damages suffered by [Lumber Company] and Blacksher, under such control and domination"; and, in Count Five, "[i]n doing so, [it is alleged,] [AmSouth] assumed fiduciary duties to [Lumber Company] and Blacksher which it breached by poor business judgment and incompetence and which caused loss and damage" to plaintiffs.
We can find no cause of action in contract or tort for wrongful control and domination. Nor are we persuaded by plaintiffs' briefs that we should create or fashion such a cause of action.
 Count Six
In this count, the plaintiffs seek to recover damages for negligence and gross negligence, based upon a maladministered loan relationship between Lumber Company and AmSouth.
The plaintiffs do not argue this, and we will not address it except to say that we find no evidence of maladministration of the financing agreement. AmSouth had no duty to make advances under Lumber Company's line of credit, when Lumber Company owed it more than AmSouth was required to lend under the financing agreement. We find no allegation that AmSouth breached the financing agreement. The mere fact that AmSouth's adherence to the financing agreement might cause the plaintiffs difficulties does not create a cause of action in either negligence or gross negligence. See Cherokee Farms v. Fireman's Fund Insurance Co.,526 So.2d 871, 874 (Ala. 1988).
The trial court did not err in entering AmSouth's summary judgment as to this count.
 CASE NO. 88-566
This is an appeal from a summary judgment rendered in favor of AmSouth on its counterclaim against Blacksher, on a guaranty agreement, wherein Blacksher absolutely and unconditionally guaranteed payment of all of the debts of Lumber Company arising out of loans and advances to Lumber Company from AmSouth.
Lumber Company executed a real estate mortgage, securing a debt of $900,000, and a financing agreement, evidencing AmSouth's agreement to advance Lumber Company up to $3,000,000 on a line of credit that was based on a formula of receivables and inventory balances. On the same day, Blacksher executed an unconditional and absolute guaranty of all of the debt of Lumber Company to AmSouth. During these transactions, Lumber Company and Blacksher were represented by counsel, who, having reviewed all documents prior to their execution, stated in an opinion letter that he had made an "investigation and examination" of the guaranty agreement and found it to be "supported by adequate consideration and to constitute a legal, valid and binding obligation" of the guarantor (Blacksher) in accordance with the terms thereof. Blacksher reaffirmed and ratified the guaranty when the loan agreement was amended a year and one-half later. Lumber Company defaulted on the mortgage and financing agreement and is now in a Chapter 7 bankruptcy proceeding. In connection with the bankruptcy of Lumber Company, AmSouth *Page 75 
filed a proof of claim for a specified amount (principal plus interest through the date of filing bankruptcy). The itemization of debt filed with that proof of claim is undisputed. It is that amount of principal debt that the trial court considered when it entered its final judgment of $3,728,112.16, including $486,275.50 in attorney fees.[2]
The issues for our review are whether the trial court erred in granting summary judgment in favor of AmSouth against Blacksher under a guaranty agreement, wherein Blacksher agreed to pay attorney fees and stipulated to a precise formula to calculate those fees; in denying Blacksher a credit for the corporate assets or security due AmSouth in bankruptcy before rendering judgment; and in considering AmSouth's motion for summary judgment without considering the special defenses filed by Blacksher to AmSouth's counterclaim.
Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P.; seeLolley v. Howell, 504 So.2d 253 (Ala. 1987). All reasonable doubts concerning the existence of a genuine issue of material fact must be resolved against the moving party. See Bechtel v.Crown Cent. Petroleum Corp., 495 So.2d 1052 (Ala. 1986). This case was pending prior to June 11, 1987; therefore, the applicable standard of review is the scintilla rule. (See Code 1975, § 12-21-12.)
Rules governing the interpretation and construction of contracts are applicable in resolving a question as to the interpretation or construction of a guaranty contract. 38 Am.Jur.2d Guaranty, § 70 (1968); Pate v. Merchants Nat'l Bank,428 So.2d 37 (Ala. 1983); Colonial Bank of Alabama v. Coker,482 So.2d 286 (Ala. 1985). "[A] guarantor is bound only to the extent and in the manner stated in the contract of guaranty."Pate v. Merchants Nat'l Bank, supra, at 39 (quoting Furst v.Shows, 215 Ala. 133, 137, 110 So. 299, 302 (1926)). When the terms of a contract are unambiguous, it is the court's duty to analyze and determine the meaning of the contract, Pate v.Merchants Nat'l Bank, supra at 39; Birmingham Trust Nat'l Bankv. Midfield Park, Inc., 295 Ala. 136, 138, 325 So.2d 133, 134
(1976); and, when appropriate, those questions may be decided by summary judgment. Williams v. Bank of Oxford, 523 So.2d 367
(Ala. 1988); Medley v. SouthTrust Bank, 500 So.2d 1075 (Ala. 1986); Colonial Bank v. Coker, supra. A guarantor cannot defeat the plain terms of the agreement by stating that he did not intend to obligate himself to the provisions of the guaranty agreement. Williams v. Bank of Oxford, supra; see also RealCoal, Inc. v. Thompson Tractor Co., 379 So.2d 1249 (Ala. 1980). Absent fraud in the inducement, an absolute guaranty will be enforced according to its terms. Medley v. SouthTrust Bank, supra. Blacksher does not present any evidence of fraud in the inducement, nor does he allege that the guaranty is ambiguous. Therefore, we must look to the clear and certain terms of the guaranty to resolve the issues before us. The guaranty reads in pertinent part as follows:
 "[Blacksher] agrees to be, without deduction by reason of setoff, defense or counterclaim of [Lumber Company], primarily liable for the due performance and prompt payment of all the obligations of [Lumber Company]. . . . No act on [AmSouth's] part and nothing other than the full payment, performance and discharge of all Obligations shall operate to discharge or satisfy the liability of [Blacksher]. . . . The liability of [Blacksher] . . . is primary, direct and unconditional and may be enforced without first resorting to any rights or remedies [AmSouth], may have against [Lumber Company] or any other person, firm or corporation or against any security. . . .
[AmSouth's] books and records showing the accounts and transactions *Page 76 
between [AmSouth] and [Lumber Company] shall be admissible in any action or proceeding, and shall be binding upon [Blacksher] for the purpose of establishing the items therein set forth, and shall constitute prima facie proof thereof. In the event any claim under this instrument is referred to an attorney for collection, [Blacksher], in addition to the liability as hereinabove set forth, shall be liable for attorneys' fees equal to 15% of the unpaid indebtedness and obligations of [Lumber Company] to [AmSouth].
 "[Blacksher] agrees that this Guaranty, and all, obligations secured hereby, shall remain in full force and effect and in its original tenor at all times hereinafter during the term hereof, notwithstanding any action or undertakings by, or against, [AmSouth] or [Lumber Company] or concerning any collateral which is secured to [AmSouth] in connection with the obligation in any proceeding in the United States Bankruptcy Court;
including without limitation, matters relating to valuation of collateral, election or imposition of secured or unsecured claim status upon claims by [AmSouth] pursuant to any Chapter of the Bankruptcy Code, or Rules of Bankruptcy Procedure as may be applicable from time-to-time." (Emphasis added.)
 Issue One
Blacksher contends that he should not be responsible for attorney fees amounting to 15% of Lumber Company's debt, even though he stipulated to that amount in the guaranty, because, he argues, this was a "routine collection case" and the fee was unreasonable. In Stephenson v. Allison, 123 Ala. 439, 449,26 So. 290, 293 (1899), the Court wrote:
 "The notes secured by the mortgage contained the stipulation to pay 'ten percent attorney's fees, if not paid at maturity.' . . . That such contracts are legitimate and enforceable, under the decisions of this court, is beyond the pale of controversy.
And there is no good reason why they should not be. Courts everywhere recognize the right of all persons sui juris to enter into such contracts as they may choose, and to put into them any term or stipulation they may agree upon, so long as the contract violates no rule of law. Many cases involving similar stipulations to the one under consideration, have been recognized by this court as binding and enforceable. And, so, too, it is competent for the contracting parties, not only to stipulate for a reasonable attorney's fee to be paid by the maker of a note in the event of the collection after default by an attorney, but to fix the amount of the reasonableness of such fee. This proposition is clearly recognized in the cases of Wood Bros. v. Winship Machine Co., 83 Ala. 424
[3 So. 757], and Ledbetter Co. v. Vinton, 108 Ala. 644
[18 So. 692]. In each of these cases there was a judgment by default for the entire amount due upon the note, in which the fee was fixed at ten percent, including this fee, without the intervention of a jury to assess the damages. In each of the cases this court upheld the judgments.
". . . .
 "It is true the record fails to disclose that any evidence was offered to prove that the attorneys in the cause rendered any services for the holders of the notes. The pleadings filed in the cause in behalf of the owners of the note to enforce their collection, disclose their appearance and necessarily the service performed in their preparation. Besides they are officers of the court, and presumably appeared in open court as counsel representing their clients, and presumably their appearance and the services rendered by them were with full authority to do so, either under an express or an implied promise to receive compensation for such services. It would have been a work of supererogation and a useless accretion of costs to have required them to propound interrogatories to themselves to prove the rendition by them of services in the cause; a fact as well known to the chancellor as to themselves. Indeed, the preparation of the note of testimony and *Page 77 
the submission of the cause for final hearing and other orders requested of the court, were services rendered by them in the very presence of the chancellor and under his immediate supervision. His knowledge of services rendered by them was just as much a knowledge of a fact upon which he was authorized to act, as the knowledge of a circuit judge that a defendant has made default, or says nothing in opposition to the rendition of a judgment, when a judgment nil dicit is asked for." (Emphasis added.)
In Smith v. Combustion Resources Engineering, Inc.,431 So.2d 1249, 1252 (Ala. 1983), we addressed the difference between a "reasonable fee" and a stipulated fee:
 "The appellant next asserts that the appellee is not entitled to collect an attorney's fee as a part of the judgment awarded by the trial court because no evidence was adduced to show the amount of the attorney's fee or that an attorney's fee was ever incurred by the appellee. The law in Alabama, however, is clearly to the contrary in cases in which a specified amount is to be paid as attorney's fees in the event of default and collection. In Vineyard v. Republic Iron Steel Co., 205 Ala. 269 [273], 87 So. 552 [555] (1921),
this Court opined:
 " ' "And so, too, it is competent for the contracting parties not only to stipulate for a reasonable attorney's fee to be paid by the maker of a note in the event of the collection after default by an attorney, but to fix the amount of the reasonableness of such fee. This proposition is clearly recognized in the cases of Wood Bros. v. Winship Mach. Co., 83 Ala. 424
[3 So. 757], and Ledbetter v. Vinton, 108 Ala. 644
[18 So. 692]." Stephenson v. Allison, 123 Ala. 439, 450, 26 So. 290, 293.
 " 'The clear holding of those cases is that, where the parties themselves fix the amount of the fee to be paid, it will be presumed, at least prima facie, that it is reasonable in amount, and that the appearance of counsel of record for the obligee establishes the liability of the obligor to pay the fee as a matter of law, without proof thereof. The trial court properly included in the judgment the amounts claimed as attorney's fees, as ascertained and shown by the contract of lease.' " (Emphasis added.)
The instant case can be easily distinguished from Peebles v.Miley, 439 So.2d 137 (Ala. 1983), in which the parties agreed to "reasonable attorney fees," thereby creating a factual question involving the proper method to determine the amount of a reasonable fee in a routine collection case.
In the instant case, it is undisputed that Blacksher agreed to and stipulated by contract to pay "attorney fees equal to 15% of the unpaid indebtedness and obligations [of Lumber Company to AmSouth]." Therefore, the trial court could have properly presumed, at least prima facie, that the amount of the fees as stipulated were reasonable in amount. See, dicta fromSmith v. Combustion Resources Engineering, supra, and Vineyardv. Republic Iron Steel Co., 205 Ala. 271, 87 So. 552 (1921). Blacksher contends, however, that the claimed sum is excessive and that there were genuine issues of material fact that would preclude granting summary judgment.
The only evidence that Blacksher presented to rebut the presumption that the fixed amount of the fee to be paid was unreasonable was the affidavit of Irvin J. Langford, Blacksher's attorney of record on appeal, who had not participated in the underlying legal representation or transaction involving AmSouth and Blacksher.
Any evidence, offered in opposition or response to a motion for summary judgment, in the form of affidavits or otherwise, must present facts that would be admissible at trial,Griffin v. Little, 451 So.2d 284 (Ala. 1984), and must be based on personal knowledge. Butler v. Michigan Mutual Ins. Co.,402 So.2d 949 (Ala. 1981). Speculation and subjective beliefs are not the equivalent of personal knowledge and do not satisfy the requirement of Rule 56(e), A.R.Civ.P. Hall v. Harris, *Page 78 504 So.2d 271 (Ala. 1983). Moreover, matters based upon information and belief are essentially hearsay and thus are insufficient to support a motion for summary judgment. Welch v. Houston CountyHospital Board, 502 So.2d 340 (Ala. 1987). See Harding v.Bethesda Regional Cancer Treatment Center, 551 So.2d 299 (Ala. 1989).
In his opposing affidavit, Blacksher's counsel did not present evidence that he had personal knowledge of the matters stated in his affidavit, but rather stated that he based his affidavit on his review of the case file:
 "From my study of the file in this case I doubt
that bank attorneys have spent much more than eight (8) hours, if that, on the collection aspect of this case to date, and a fee of $486,275.50 which is the amount [of attorney fees] claimed . . . is clearly unreasonable."
Therefore, the representations that Blacksher's counsel relied on are hearsay; consequently, his affidavit is inadmissible to preclude summary judgment.
Based on the foregoing, we hold that the opposing affidavit of Blacksher's counsel was not legally sufficient to create a genuine issue as to any material fact. Therefore, the trial court did not err in entering the summary judgment in favor of AmSouth for the amount of fees calculated according to the formula that Blacksher agreed to and stipulated in the guaranty agreement.
 Issue Two
Blacksher further contends, without disputing the total amount of the debt, that AmSouth should not be permitted to seek and recover full payment from Blacksher on the guaranty, when the trustee in bankruptcy is allegedly holding funds on behalf of AmSouth in partial satisfaction of Lumber Company's indebtedness to AmSouth. Rather, Blacksher contends that the judgment against him should have been reduced by the amount of those funds, thereby reducing the attorney fees that Blacksher owes AmSouth. The written guaranty is to the contrary.
In the guaranty, Blacksher agreed to the following terms:
 "[Blacksher] agrees that this Guaranty, and all obligations secured hereby, shall remain in full force and effect and in its original tenor at all times hereinafter during the term hereof, notwithstanding any action or undertakings by, or against [AmSouth] or [Lumber Company] or concerning any collateral which is secured to [AmSouth] in connection with the obligation in any proceeding in the United States Bankruptcy Court; including without limitation, matters relating to valuation of collateral, election or imposition of secured or unsecured claim status upon claims by [AmSouth] pursuant to any Chapter of the Bankruptcy Code, or Rules of Bankruptcy Procedure as may be applicable from time-to-time." (Emphasis added.)
From the clear and certain terms of the guaranty, AmSouth had the absolute right to proceed against Blacksher on the guaranty without regard to any collateral secured to AmSouth in connection with the bankruptcy proceeding. The guaranty is enforceable as written under Alabama law. See Williams v. Bankof Oxford, supra. Therefore, the trial court did not err in entering the summary judgment prior to the application of collateral proceeds to the guaranteed debt.
 Issue Three
Blacksher also contends that the trial court erred in considering AmSouth's motion for summary judgment without considering related factual issues contained in the special defenses that Blacksher incorporated into his amended answers to AmSouth's counterclaim. These claims, set up as affirmative defenses, were some of the same defenses that Blacksher and Lumber Company asserted in their amended complaint against AmSouth and that are involved in the first appeal (case no. 87-1164). AmSouth's counterclaim, however, was against Blacksher only, as guarantor of all of Lumber Company's debts; it did not involve *Page 79 
Lumber Company. The defenses and claims of Lumber Company are not defenses to the absolute and unconditional guaranty that Blacksher entered into with AmSouth. Furthermore, in the guaranty, Blacksher agreed "to be, without deduction by reason of set off, defense, or counterclaim of [Lumber Company], primarily liable for the due performance and prompt payment of all the obligations of [Lumber Company]." The language of the guaranty is clear and certain, and it indicates that Blacksher waived the benefit of any rights that Lumber Company had to contest the debt. When the terms of the guaranty are clear and certain, its construction and legal effect become questions of law for the court. See Williams v. Bank of Oxford, supra;Medley v. SouthTrust Bank, supra; see also Morris v. ColumbiaNat'l Bank, 79 B.R. 777, 781 (Bankr., N.D.Ill. 1987); see also,Rusch Factors v. Scheffler, 58 A.D.2d 557, 396 N.Y.S.2d 374
(1977); Delta Diversified, Inc. v. Citizens Southern Nat'lBank, 171 Ga. App. 625, 320 S.E.2d 767 (1984); Silbert v.Silbert, 85 A.D.2d 661, 445 N.Y.S.2d 215 (1981); and Goodridgev. Fernandez, 121 A.D.2d 942, 505 N.Y.S.2d 144 (1986). The affirmative defenses, even if valid theories that Lumber Company could have asserted in its amended complaint, are not available to Blacksher as guarantor of the debts of Lumber Company.
Therefore, the trial court did not err in entering AmSouth's summary judgment against Blacksher without considering the special defenses filed by Blacksher to AmSouth's counterclaim.
87-1164 AFFIRMED.
88-566 AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES and KENNEDY, JJ., concur.
[1] Alabama Code 1975, § 7-2-103(1)(b), has a different definition of "good faith" to be applied to merchants under Article 2.
[2] The final judgment was composed of the following:
 Principal debt $2,815,177.23 Interest $ 426,659.43 Attorney fees 486,275.50 ------------- Total Judgment $3,728,112.16