# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## NOVEMBER TERM, 1894.

## Penn & Co. v. Smith, Grainger & Cantrell.

*Action by Vendor against Purchaser of Goods.*

1. *Breach of contract of sale; measure of damages; profits.*—Where, at the time of the execution of a contract for the sale and purchase of goods, the seller knows the buyer has an existing contract for the re-sale of such goods, and that the object of the purchase is the performance of that contract, and with this knowledge he fails to deliver the goods according to the terms of said original contract, the buyer can recover as damages for such breach the profits that would have been derived from said re-sale; the recovery of such profits being dependent, however, upon the existence of the contract of re-sale at the time of the purchase, and the fact that it was known to the seller.

2. *Same; recoupment of damages.*—In an action by the seller for the breach of a contract of sale, a plea of recoupment, which avers that after the making of said contract, and before the arrival of the goods purchased from the plaintiff, the defendant contracted to re-sell said goods at a large profit, which he was prevented from doing by the failure of the plaintiff to comply with the terms of the contract of sale, is not sufficient to justify the recoupment of the prospective profits as damages, and is demurrable.

3. *Same; when causes producing the breach admissible in evidence.*—In an action by a vendor for the breach of a contract of sale, the motive inducing the vendee to a breach of the contract is not material; but when the causes producing the alleged breach are matter of inquiry, and the vendee justifies said breach on a particular ground, the existence of which is a matter of dispute, the evidence of the existence of another cause to which the default may be attributed is relevant and admissible, for the purpose of ascertaining what was the real cause of the breach.

4. *Same; admissibility of evidence.*—When, in an action by a vendor

for the breach of a contract, it is shown that the vendor, on the vendee's refusal to accept the goods, sold the goods at a much lower price than that fixed in the contract, the fact that there was a decline in the price of the article sold after the contract was made, is admissible in evidence as tending to account for the disparity between the original price and that obtained at the re-sale by the vendor.

APPEAL from the Circuit Court of Lee.

Tried before the Hon. JESSE M. CARMICHAEL.

This action was brought by the appellees, Smith, Grainger & Cantrell, suing as partners, against the appellants, Penn & Co., to recover damages for the breach by the defendants of a contract for the purchase by them from the plaintiffs of a quantity of flour, at specified prices. The facts of the case, on the present appeal, are substantially the same as those found in the report of the case on the former appeals, reported in 93 Ala. 476 and 98 Ala. 560.

Upon the last trial of the cause, after its second remandment, the defendants filed the following plea of recoupment: "4. Defendants aver that plaintiffs knew at the time of the alleged agreement of sale that defendants were wholesale merchants, and were buying said flour for the purpose of re-sale, and defendants aver that they contracted to buy said flour on samples shown to them by plaintiffs, and that the same was to be shipped in a reasonable time. That under said contract plaintiffs shipped to defendants four hundred and fifty barrels of flour of a grade materially inferior to that which they had agreed to sell as aforesaid. That after the making of said contract, and before the arrival thereof, defendants contracted to resell said flour at a large profit, to-wit, five hundred dollars, and by reason of the said inferior grade of the flour shipped, plaintiffs were unable to fulfill said contracts of re-sale, by which the said profits were wholly lost to defendants, and they here offer to recoup said damage against the alleged demands of the plaintiffs, and ask judgment for the excess." The plaintiffs demurred to this plea, upon the grounds: 1st, that the damages sought to be recouped against the claim of the plaintiffs were too remote and speculative; 2d, because it fails to show that plaintiffs knew of any sale of this particular flour, by the defendants.; and, 3d, because it shows that the alleged re-sale by the defendants was made after the contract between the plaintiffs and the

[Penn & Co. v. Smith, Grainger & Cantrell.]

defendants was entered into. This demurrer to the 4th plea was sustained. Among the other charges given by the court to the jury, at the request of the plaintiffs, and to the giving of each of which defendants separately excepted, were the following: (1.) "Any collusion between Hudmon and John Smith which was not known to plaintiffs can not be considered by the jury in determining the good faith of plaintiffs." (3.) "If the jury believes from the evidence that the flour delivered was materially and substantially equal in quality to the samples, and that the plaintiffs exercised good faith and reasonable diligence in reselling the flour in bulk in the Opelika market, then the plaintiffs should recover." (4.) "If the defendants, Penn & Company, made no demand for notice of its time and place of the re-sale, then the plaintiffs were not required to give such notice to the defendants." (5.) "If the flour shipped by plaintiffs to defendants was equal in quality to the sample by which it was sold, then defendants had no right to reject said flour, and in order to authorize the defendants to reject said flour, there must have been a real and substantial difference between said flour and the samples, and not an imaginary, fanciful difference." (6.) "If the plaintiffs, in making the re-sale, acted in such manner as to obtain the highest cash price under the circumstances, for the entire lot of flour in the Opelika market, they faithfully performed their trust in conducting the re-sale."

There was judgment for the plaintiffs. The defendants appeal, and assign as error the several rulings of the trial court to which exceptions were reserved.

J. M. CHILTON and SANFORD & SON, for appellants. The demurrer to the plea of recoupment should have been overruled. Whether the special damages claimed was the measure of their recovery, could not, therefore be raised by demurrer to the whole plea. It should have been presented by motion to strike that part of the plea claiming the special damages.—*Daughtery v. A. U. Tel. Co.*, 75 Ala. 168; *Kennon v. W. T. Co.*, 92 Ala. 399; *A. G. S. R. R. Co. v. Tapia*, 94 Ala. 226.

2. The court erred in admitting evidence of the decline in price of flour between the purchase and date of rejection.—*Storey v. Union Bank*, 34 Ala. 687; *Thompson*

[Penn & Co. v. Smith, Grainger & Cantrell.]

v. *Bowie*, 4 Wall. 463 ; 7 Amer. & Eng. Encyc of Law, 57-58.

GEORGE P. HARRISON and A. & R. B. BARNES, *contra.* The demurrer to the defendants' plea of recoupment was properly sustained. The damages sought to be set up in said plea were too remote and speculative, and otherwise improperly pleaded.—2 Benj. on Sales, § 1323 ; 2 Addison on Contracts, § 589.

The rulings of the court upon the evidence were free from error.—*Norris v. Spofford*, 127 Mass. 85 ; *Bronner v. Frauenthal*, 37 N. Y. 166 ; 2 Benj. on Sales, 1021, 1022, 1023.

BRICKELL, C. J.—This is the third appeal in this case. The former decisions hold, that the contract of sale was negotiated by the exhibition to the buyers of samples of the flour proposed to be sold, from which resulted an implied warranty on the part of the sellers that the bulk of the flour when delivered would correspond to the samples. That in the present action, the burthen of proving the correspondence rested upon the sellers. If the bulk of the flour offered to be delivered, did not correspond to the samples, the buyers could properly refuse to receive it and to pay the purchase money. If there was such correspondence, the buyers were under the duty of receiving and paying for the flour ; and on the refusal, the sellers, having possession, after giving the buyers notice of their intention, had the right to resell for the satisfaction of the purchase money. If the buyers desired the resale to be made elsewhere than in Opelika, where the flour was deliverable, or in any particular mode, it was their duty to communicate their wishes to the sellers. In the absence of such communication, a resale made by the sellers at Opelika, in good faith, in such manner as would command the fair market value of the flour, rendered the purchasers liable for the difference between the amount realized on such resale, and the agreed price of the flour.—*Penn v. Smith*, 93 Ala. 476 ; *Penn v. Smith*, 98 Ala. 560. The evidence now before us is not materially different from what it was when the case was here previously, and, as we are satisfied with our former rulings, we shall not notice any of the

[Penn & Co. v. Smith, Grainger & Cantrell.]

assignments of error which may have been intended to draw them in question.

When a contract of sale of goods is broken, the price not having been paid in advance, by the failure of the vendor to deliver them according to the terms of the bargain, as a general rule, the measure of damages the vendee is entitled to recover is the difference between the contract price and the market value of the goods at the time and place of delivery, with interest.—2 Sedg. Dam., (8th Ed.), § 734; *Young v. Cureton*, 87 Ala. 727; *Bell v. Reynolds*, 78 Ala. 511; *Haralson v. Stein*, 50 Ala. 347. Without entering upon a discussion of the vexed question, or an examination of the conflicting and contradicting authorities, touching anticipated profits as an element of recoverable damages, the rule seems to be well settled, that if at the time of a contract of purchase, the seller knows the buyer has an existing contract of resale, and the object of the purchase is the performance of that contract, the profits derivable from the resale are recoverable.—*Bell v. Reynolds*, 78 Ala. 511; *Young v. Cureton*, 87 Ala. 727; 2 Sedg. Dam., § 740; 2 Benj. Sales, (Corbin's Ed.), § 1227. The recovery of such profits depends, however, on the existence of the contract of resale at the time of the purchase, and the fact that it was made known to the vendors. The plea of recoupment, which was introduced into the case on the last trial, avers particularly that the alleged resale was made subsequent to the original purchase, and without noticing its other defects and insufficiencies, there was no error, for this reason, in sustaining the demurrer to it. The vendors may have known the vendees were engaged in the business of selling flour, and had the general intention of resale, but it can not be supposed that it was in the contemplation of either party, that the vendors should be drawn into a liability for the losses resulting from the failure of the future operations of the vendee in the ordinary course of the business in which they were engaged.

The motive inducing a party to a breach of contract will not involve him in liability for exemplary or punitive damages. If there is a breach, the law fixes the measure of recovery, and whether the breach was accidental, or willful and intentional, is not material.—2 Sedg. Dam., (8th Ed.), § 603. But when the causes

producing the breach are a matter of inquiry; when the party in default justifies it for a particular cause or reason, and the existence of that cause or reason is the matter of dispute, the evidence of the existence of another cause to which the default may be attributed, though it may involve him in an evil intent, is relevant and admissible. Relevant and admissible, not to fix a liability for damages beyond the legal standard, but for the purpose of ascertaining what was the real cause of the default. The appellants assigned as the reason for the rejection of the flour, a want of correspondence with the samples by which the bargain was negotiated. Whether there was such want of correspondence, was the more severely litigated fact. The evidence of the plaintiffs and of the defendants who were examined as witnesses, touching the fact, was in direct conflict. The decline in the price of flour after the making of the bargain, before the time of its performance, continuing to the refusal of the appellants to receive and pay for the flour proposed to be delivered, had no tendency, it is true, to prove the affirmative fact, the sellers were bound to prove, that the flour tendered corresponded to the samples. But it had a tendency to prove a cause, other than that assigned, which may have induced the refusal to receive and pay for the flour. And which was the controlling cause, it was the province of the jury to determine. Another controverted fact, was the reasonableness of the resale—whether it produced the fair value of the flour. There was a disparity between its product, and the price at which the flour was sold originally. The decline in the price of flour, it seems obvious, was a fact, shedding light upon the reasonableness and fairness of the resale, and having a tendency to account for the disparity between its product, and the original price. There was no error in overruling the objection to the admission of this evidence.

There are numerous other exceptions to the admission and rejection of evidence, which have been examined and considered. It would serve no useful purpose, and would unnecesarily prolong this opinion to pass upon them separately; we do not find that in respect to them the court below erred.

The instructions given the jury, numbered from three to six, inclusive, conform to the decisions heretofore

made in this case.  The first instruction, asserts a mere truism.  Collusion between the bidders at the resale, of which the appellees had no knowledge,  and  in which they had no participation could not affect their right of recovery.

Affirmed.