MADDOX, Justice.
This is an appeal from a summary judgment in favor of the defendant on the plaintiff’s claim that the defendant owed her a surplus of funds received by him when he foreclosed on a piece of property mortgaged to him by the plaintiff.
On April 28, 1981, Vesta Benedick Patrick executed and delivered a mortgage to Leo L. Crain.[1] The mortgage was executed by Patrick to secure a $25,000 loan made by Crain to her in order for Patrick, a real estate broker, to invest in a real estate development project at Fort Morgan, Ala *286 bama. The mortgage issued to Crain was on a piece of beachfront property owned by Patrick.[2] The mortgage that Patrick executed and delivered to Crain contained the following statement:
“The said sum of Twenty-Five Thousand and No/100 ($25,000.00) DOLLARS, without interest, shall be due and payable and shall be paid one (1) year from date.”
The mortgage also contained a “power of sale” clause enabling Crain to foreclose and sell the property at public outcry if and when Patrick defaulted on her note to him.[3]
Patrick’s real estate development project fell upon economic hard times. Of the proposed 50 condominium units to be built for the project, only 25 units were actually constructed, one of which was the condominium unit promised to Crain by Patrick. In April 1983, the condominium unit promised to Crain was completed, and he subsequently took possession of it. Later, on December 30, 1983, when Crain learned that a bank, which held a construction loan mortgage on the entire condominium project, was contemplating foreclosing on it, a foreclosure that would jeopardize his interest in the condominium unit, he decided to record his mortgage on Patrick’s beach house. In April 1984, Crain was notified by the bank to vacate the condominium unit because it had foreclosed on the entire project.[4] Crain alleges that Patrick’s failure to deliver to him good title to the condominium unit violated his “Offer to Purchase” contract with her and caused him to threaten Patrick with an action for specific performance of the contract; however, Crain adds that Patrick, hoping to avoid an action for specific performance by Crain, orally agreed through her attorney to repay him the principal loan of $25,000 plus accrued interest at 12% per annum from the mortgage execution date. Patrick denies ever agreeing to an oral modification of her mortgage with Crain. On September 4, 1986, after notices of a foreclosure sale were published by Crain in the Baldwin County Times, a newspaper published in Bay Minette, Alabama, Crain purchased the foreclosed property for $47,-765.87, an amount that included the principal loan of $25,000 plus accrued interest of $22,765.87 allegedly owed by Patrick on the principal loan.
On August 25, 1987, Patrick filed a complaint against Crain in the Circuit Court of Baldwin County. In her two-count complaint Patrick alleged (1) that Crain had failed to notify her of the upcoming foreclosure sale as required under § 35-10-8 (repealed); and (2) that Crain had misrepresented to her an intention to reconvey to her legal title to the mortgaged property upon his taking possession of the completed condominium unit.
On January 19, 1988, Crain filed a motion for summary judgment. Patrick amended her complaint to include a third count alleging a right to the surplus of funds received by Crain when he purchased the foreclosed property for more than the alleged debt owed by her. Specifically, Patrick alleged *287 that since Crain had purchased the foreclosed property for $47,765.87, when the debt owed to him was only $25,000, Crain, pursuant to the terms of the mortgage, owed her the remaining $22,765.87, the difference between the foreclosure purchase price paid by Crain of $47,765.87 and the amount of the alleged debt owed by her to Crain.[5] On February 4, 1988, the trial court entered summary judgment for Crain as to counts one and two of Patrick’s complaint, and that judgment was certified as a final judgment pursuant to Rule 54(b), A.R. Civ.P.; however, the trial court did not enter summary judgment as to count three of the complaint.[6] On September 22, 1988, Crain filed his answer in response to Patrick’s complaint, in which he denied the allegations stated in count three of her complaint.[7] Crain then refiled his motion for summary judgment. On May 23, 1989, Patrick also filed a motion for summary judgment. The trial court entered a summary judgment in favor of Crain on count three. Patrick then appealed.
The standard of review on a motion for summary judgment was recently stated by this Court in McConico v. Romeo, 561 So.2d 523, 525 (Ala.1990), in which this Court stated the following:
“Summary judgment is proper when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P.; Houston v. McClure, 425 So.2d 1114, 1116 (Ala.1983); Papastefan v. B & L Constr. Co., 356 So.2d 158 (Ala.1978). In determining the existence or absence of any genuine issue of material fact, we are limited in our review to those factors that were before the trial court when it ruled on the summary judgment motion. Ex parte Bagby Elevator & Elec. Co., 383 So.2d 173 (Ala.1980).”
A review of the record before the trial court reveals the following: On April 14, 1981, Crain signed an “Offer to Purchase” contract with Patrick in which he promised to pay Patrick the sum of $25,000, in return for which Patrick agreed to convey to him good title to a proposed condominium unit within 30 days after its completion. On April 28, 1981, Patrick, in order to secure Crain’s $25,000 loan, executed and delivered to him a mortgage on a beach house owned by her. That mortgage expressly stated that no interest would be charged on the $25,000 loan. Crain alleges that, despite that specific provision in the mortgage, Patrick orally agreed to modify the mortgage so as to allow interest, at the rate of 12% per annum, after he had threatened to commence an action for specific performance under his “Offer to Purchase” contract with Patrick in which Patrick had promised to convey good title to the condominium unit, a contract that was allegedly breached by her when the mortgagee bank foreclosed on the entire condominium project and ordered him to vacate the condominium unit that he had been promised by Patrick. Crain adds that under the alleged oral modification of the mortgage Patrick agreed to repay him the principal loan of $25,000 plus accrued interest at 12% per annum from the mortgage execution *288 date. However, Patrick asserts that no such oral modification of her mortgage with Crain occurred; consequently, she asserts that under her mortgage with Crain he owes her the sum of $22,765.87, the difference between Crain’s foreclosure purchase price of $47,765.87 and her debt to him of $25,000.
The current law in Alabama regarding a subsequent oral modification of a mortgage was stated by this Court in Weatherwax v. Heflin, 244 Ala. 210, 12 So.2d 554 (1943):
“We need not cite the numerous authorities to the general rule that a mortgage cannot subsequent to its execution be extended by parol agreement to secure debts or obligations other than that which it is executed to secure. Such an attempt as that before us would be equivalent to the execution of a new mortgage to secure the additional obligation and would fall within the prohibition of the statute of frauds. Code 1940, T. 20, §§ 2 and 3 [now codified as Ala. Code 1975, §§ 8-9-1 and 8-9-2], This is not saying that oral testimony is not admissible to show what obligations were intended at the time to be secured by a given mortgage.”
244 Ala. at 218, 12 So.2d at 562.
The record before this Court clearly shows that at the time Patrick executed her mortgage to Crain, a mortgage that was prepared by him, both Patrick and Crain agreed that no interest would be charged on the loan, a provision explicitly stated in the mortgage. The record shows that the parties are in sharp disagreement over the question of the amount due under the note, which was secured by the mortgage; therefore, we hold that a genuine issue of material fact existed whether Patrick, in fact, agreed that the mortgage would secure the payment of the underlying obligation, plus 12% interest. The mortgage states that Patrick executed a promissory note “bearing even date herewith ... and payable ... without interest." (Emphasis added.) It is undisputed that Patrick did not execute a promissory note. Consequently, there is a serious dispute concerning what obligations were intended to be secured by the mortgage. Weatherwax suggests that oral testimony may be permissible to show what obligations were intended by the parties to be secured by the mortgage. Because of these facts, we hold that summary judgment was incorrectly entered.
Because the cause must be remanded, we feel compelled to address Crain’s assertion that at the time he foreclosed on the mortgage Patrick did not retain any interest in the foreclosed property, and therefore had no standing to commence her action against him for her claimed right to surplus. Although the record shows that two months prior to Crain’s foreclosure on the mortgage, Patrick did transfer to her former husband her equity of redemption as to that property, it appears that this transfer was made upon the advice of Crain himself when Patrick told him that she might have to declare bankruptcy.
After a thorough review of the record, we conclude that there are genuine issues of material fact concerning Patrick’s alleged oral modification of her mortgage with Crain and also questions of material fact concerning Patrick’s decision to transfer her remaining interest in the property to her ex-husband prior to Crain’s foreclosure on that property. Because there are genuine issues of material fact in the case, we conclude that the trial court erred in entering the summary judgment for Crain. Therefore, that judgment is reversed, and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.

. The record indicates that Crain, a lawyer, and Patrick have known each other for nearly 20 years. In fact, the record indicates that prior to Crain’s foreclosure of the mortgaged property on September 4, 1986, he had earlier represented Patrick in the execution of a warranty deed to that same property to her former husband, W.O. Patrick, on June 16, 1986; in that warranty deed from Patrick to her former husband, Patrick conveyed her equity of redemption to her former husband; later, on November 14, 1986, more than two months after Crain's foreclosure of that same mortgaged property, Crain again represented Ms. Patrick, in a transaction involving a conveyance of her former husband’s statutory right of redemption to her.

. Crain agreed to lend Patrick $25,000 in return for her promise to convey to him a condominium to be built by Patrick in a real estate development project. Under the terms of their agreement, Crain would loan Patrick the sum of $25,000, in return for which Patrick would convey to him good title to one of the proposed condominiums within 30 days after its completion. As stated in the "Offer to Purchase” contract signed by Crain on April 14, 1981, Crain's payments to Patrick would be applied to the purchase price of the proposed condominium unit promised by Patrick. Realizing that the real estate development project was risky not only to her, but also to Crain, Patrick decided to secure Crain’s loan to her by executing to him a mortgage on her beach house.

. Because the mortgage was executed on April 28, 1981, Alabama's Power of Sale Statute, Ala. Code 1975, § 35-10-1 (repealed), applied to the transaction. Mortgages containing a “power of sale” clause and executed after December 31, 1988, are now covered under §§ 35-10-11 to -16 (Cum.Supp.1989).

.Crain alleges that from the time of his possession of the promised condominium unit until its foreclosure by the out-of-state bank/mortgagee Patrick would not deliver title to the unit. Patrick disagrees and alleges that she attempted on numerous occasions to deliver title to Crain but that he refused to accept title to the condominium unit, fearing that he and his wife would soon divorce and, therefore, not wishing to have the unit become a part of any future property settlement agreement between him and his wife.

. The mortgage executed by Patrick on April 28, 1981, states, in part, the following:
"[T]he proceeds of said [foreclosure] sale to apply first, to the payment of the costs of said sale, including a reasonable attorney’s fee; second, to the payment of the amount of said principal indebtedness, whether due or not, together with the unpaid interest thereon to the date of sale, and any amount that may be due the mortgagee [Crain] by virtue of any of the special liens herein declared; and third, the balance, if any, to pay over to the said Vesta Benedick Patrick." (Emphasis added.)

. Patrick chose not to appeal from the trial court’s final judgment concerning counts one and two of her complaint; therefore that judgment is not before this Court.

.In his answer, Crain stated that Patrick lacked standing to commence her action against him. Crain’s assertion that Patrick lacked standing to commence her action against him based on an alleged right to surplus arises from the fact that at the time he foreclosed on the property Patrick did not possess any interest in the foreclosed property; therefore, according to Crain, Patrick did not have standing to commence her action against him for a claimed right to surplus.