863 So.2d 1088 (2003)
WINNER INTERNATIONAL CORPORATION
v.
COMMON SENSE, INC.
1011745.
Supreme Court of Alabama.
May 9, 2003.
T. Louis Coppedge and Thomas J. Butler of Maynard, Cooper & Gale, P.C., Birmingham, for appellant.
*1089 J. Gusty Yearout of Yearout & Traylor, P.C., Birmingham, for appellee.
PER CURIAM.
Common Sense, Inc., sued Winner International Corporation, alleging fraud, conversion, and breach of contract arising out of Winner's alleged failure to properly market and sell a product developed by Common Sense under an exclusive license agreement between the two corporations. At the close of all the evidence in the case, the circuit court granted Winner's motion for a judgment as a matter of law as to Common Sense's fraud and conversion claims. The jury returned a verdict for Common Sense in the amount of $376,565.14 on the breach-of-contract claim. Winner filed a renewed motion for judgment as a matter of law, or, in the alternative, a motion for new trial; the circuit court denied the motion. The trial court entered a judgment on the jury verdict and Winner appealed as to the judgment on the breach-of-contract claim.
In its appeal, Winner claims that the circuit court committed reversible error by erroneously allowing evidence of a separate lawsuit to be admitted as character evidence or as "pattern-and-practice" evidence on the fraud claim. Winner also claims that, after entering a judgment as a matter of law for Winner on the fraud claim, the circuit court committed reversible error by allowing the jury to consider what it says is irrelevant evidence presented to prove the fraud claim in the context of the breach-of-contract claim and by failing to give a limiting jury instruction regarding the use of that evidence on Common Sense's breach-of-contract claim. We reverse the judgment as to the breach-of-contract claim and remand the case.

Facts
Charles Wigley, Rodney Tittle, and others formed Common Sense, Inc., an Alabama corporation, after conceiving the idea for the "Door Club," a floor-mounted doorstop designed to prevent home break-ins. Winner, a Pennsylvania business trust, was formed by James Winner, Jr., in 1985 for the purpose of selling security products. In an effort to obtain help in the marketing and sale of the Door Club, Wigley contacted Winner, and in 1992 the two corporations entered into an exclusive license agreement, pursuant to which Winner had the exclusive right to manufacture, market, and sell the Door Club. For each sale and delivery of a Door Club to a customer, Common Sense was to receive a royalty of $1.00. The duty to exercise good faith and due diligence was expressly stated in the license agreement:
"The Licensee shall in good faith and with due diligence conduct all manufacturing, marketing and the other operations respecting the invention in accordance with the best business customs of its industry."
After a couple of years of marketing efforts, the Door Club was not selling well. In 1996, the officers of Common Sense, unconvinced that Winner was paying it all the royalties it was due, became concerned that Winner might not be dealing with Common Sense in good faith. They sent an accountant to study Winner's sales records for the Door Club.
As evidence of Winner's violation of its duty of good faith and due diligence, Common Sense presented evidence indicating that Winner missed an opportunity to sell approximately 300,000 Door Clubs in 1998. At that time and while this action, filed in 1996, was pending, a liquidator on the West Coast approached Winner and showed an interest in purchasing Winner's entire inventory of the Door Club for between five and seven dollars per item. Winner contends that the production cost of a Door Club was approximately the same as the tentative offer stated by the *1090 West Coast liquidator and that, to avoid selling at a loss,[1] Winner contacted Common Sense's counsel to see if Common Sense would reduce its royalty from $1.00 to $.50 for that particular purchase only. Common Sense would not accept a royalty payment lower than that required by the license agreement, and the West Coast liquidator apparently lost interest in the sale.
In 1993, James E. Winner, Jr., and a Winner employee began working on a modified door lock, for which Winner's patent attorney had assigned a file number. In 1994, James E. Winner, Jr., and the employee applied for a patent on the modified door lock. The patent was approved on February 13, 1996. Although the license agreement required Winner to notify Common Sense of such activities, Winner never contacted Common Sense about its work on the patent for the new product. Common Sense contends that these facts indicate Winner's attempt to produce a door lock to compete with the Door Club in violation of the license agreement and that, therefore, they are evidence of Winner's bad faith. John F. Hornbostel, Jr., vice president, secretary, and general counsel for Winner, reviewing the license agreement in court, testified that Common Sense would have been entitled to the patent on the modified door lock. Common Sense alleged that in a prior deposition, Mr. Hornbostel had taken the position that the new patent would belong to Winner.
Winner ceased advertising the Door Club after Common Sense filed this action. In 1996, after Common Sense had become suspicious of Winner's accounting for the sales of the Door Club, an accountant for Common Sense visited Winner's headquarters in Sharon, Pennsylvania, to review its sales records. According to Common Sense, Winner's representative refused to produce some of those documents, which Common Sense argues also was in violation of the license agreement. According to Common Sense, a Winner representative also told Common Sense's accountant that Common Sense was not entitled to royalties for international sales of the Door Club.
Common Sense called Mr. Hornbostel as its first witness. During direct examination, Common Sense's counsel offered into evidence a preliminary injunction that had been entered in Lawman Armor Corporation v. Winner International ("Lawman Armor"), a patent-infringement action filed against Winner in 2001. By offering the preliminary injunction into evidence, Common Sense was attempting to demonstrate a pattern and practice of fraud on the part of Winner. Winner immediately objected. Winner had filed a motion in limine before trial, seeking to exclude any evidence of the Lawman Armor lawsuit, and the circuit court had assured Winner that when that issue was raised, it would require Common Sense to introduce any evidence of that lawsuit with the requisite proffer and would consider the motion in limine at that time. During cross-examination of Mr. Hornbostel by Winner's counsel, Winner presented evidence it contends shows that the Lawman Armor lawsuit is distinctly different from the action filed by Common Sense. Winner argued to the circuit court that Lawman Armor failed the test for pattern-and-practice evidence of fraud. The trial court denied Winner's motion.
At no time during trial did Common Sense contend that the evidence relating to the Lawman Armor lawsuit was being *1091 offered for anything other than evidence of a pattern and practice of fraud. During closing argument, after the trial court had granted Winner's motion for judgment as a matter of law as to the fraud claim, Common Sense's counsel argued that evidence of the Lawman Armor lawsuit was evidence of motive and intent to act in bad faith with respect to the license agreement. Winner's counsel orally argued that such pattern-and-practice evidence was relevant only as to the fraud action and requested a limiting instruction to that effect. The trial court did not instruct the jury that the Lawman Armor evidence was, once the fraud claim had been disposed of, being used for the purpose of proving bad faith with respect to the license agreement, nor did the circuit court instruct the jury to ignore that evidence once it had entered a judgment as a matter of law for Winner on the fraud claim.
Winner filed posttrial motions for a judgment as a matter of law and for a new trial based on alleged errors on the part of the trial judge. First, Winner claimed that the judge erred by allowing the introduction of the evidence relating to the Lawman Armor lawsuit. Second, Winner claimed that the trial court erred to reversal by not instructing the jury to ignore that evidence in its deliberations on the breach-of-contract claim. Winner moved for a judgment as a matter of law or, in the alternative, a new trial. The trial court denied the motion.

Standard of Review
With respect to other acts of wrongdoing, the rule relating to the introduction of pattern-and-practice evidence is:
"The basic intent of Rule 404(b) is to exclude collateral character evidence, which ordinarily is likely to prejudice the jury and confuse the issues. However, this Court has long held that evidence of past unrelated acts, so-called pattern-or-practice evidence, may be admissible in certain circumstances when fraud is alleged."
Morris v. Laster, 821 So.2d 923, 926 (Ala. 2001).
Regarding jury instructions, this Court has said:
"It is a basic tenet of Alabama law that `a party is entitled to have his theory of the case, made by the pleadings and issues, presented to the jury by proper instruction, ... and the [trial] court's failure to give those instructions is reversible error.' Alabama Farm Bureau Mut. Ins. Service, Inc. v. Jericho Plantation, Inc., 481 So.2d 343, 344 (Ala.1985). (Citations omitted.) `It is the duty of the trial judge to educate the jury on the law of the case.' Grayco Resources, Inc. v. Poole, 500 So.2d 1030, 1033 (Ala.1986). As the Court in Grayco observed:
"`It is the inescapable duty of the trial judge to instruct the jurors fully and correctly on the applicable law of the case, and to guide, direct and assist them toward an intelligent understanding of the legal and factual issues involved in their search for the truth.'
"Id. (Citations omitted.)"
Volkswagen of America, Inc. v. Marinelli, 628 So.2d 378, 384-85 (Ala.1993).
"When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."
Rule 105, Ala.R.Evid.
As for Winner's motion for new trial,
"`Whether to grant or deny a motion for new trial rests within the sound discretion of the trial court, and this Court will *1092 not reverse a ruling in that regard unless it finds that the trial court's ruling constituted an abuse of that discretion.' `Without a showing of such an abuse, the trial court's ruling must be affirmed.'" New Plan Realty Trust v. Morgan, 792 So.2d 351, 355 (Ala.2000) (citation omitted).

Analysis
Winner contends that even if the evidence of the Lawman Armor lawsuit was relevant to prove a pattern and practice on Winner's part of attempting to defraud companies of their patents, it became totally irrelevant and unfairly prejudicial once the trial court entered a judgment as a matter of law for Winner on the fraud claim. At that point, Winner argues, that evidence became improper evidence of a collateral wrong or act against a third party, and, in accordance with Rules 105 and 404(b), Ala.R.Evid., the trial court should have instructed the jury not to consider that evidence.
Common Sense argues that the Lawman Armor evidence was relevant both to show a pattern and practice of fraud and to show motive and intent on the breach-of-contract claim on the question whether Winner was dealing in bad faith in violation of the license agreement and that, even if the trial court did err by not instructing the jury to ignore the Lawman Armor evidence, the error was harmless because even without that evidence there was substantial evidence of a breach of contract by Winner.
The Lawman Armor lawsuit was a patent-infringement action against Winner by a competitor in the market of automotive brake locks. The acts complained of against Winner in Lawman Armor occurred in 2001, nine years after Winner and Common Sense entered into the license agreement and five years after the filing of this action by Common Sense. Rule 404(b), Ala.R.Evid., states:
"(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive [or] intent...."
Unlike Common Sense's fraud and breach-of-contract claims against Winner, Lawman Armor was a patent-infringement case; it involved no allegations of fraud or breach of contract. The parties in Lawman Armor were not parties to a contract; rather, they were competitors. In that case, representatives of a competing company charged Winner with patent infringement, alleging that Winner intended to make a competing product and then coerce the competitor into giving Winner an exclusive license agreement to sell the competitor's product.
Common Sense presented evidence indicating that not long after Winner became aware of Common Sense's Door Club and without informing any representative of Common Sense, Winner began to make a modification to the Door Club and filed a patent application for that invention. Common Sense theorized at trial that Winner intended to create a competing product, to market Common Sense's Door Club just enough to create name recognition for the product, and then to market its own inventionthe modificationand drive Common Sense's Door Club from the market.
Without addressing whether the evidence of the Lawman Armor lawsuit would have been admissible in the fraud action, we believe the circuit court erred in admitting that evidence in the trial of the breach-of-contract claim. Common Sense never argued, until the end of trial, that it intended to use that evidence as proof of its breach-of-contract claim. Once Winner received a judgment as a matter of law in *1093 its favor on the fraud claim, the Lawman Armor preliminary injunction was no longer relevant, and it was error not to instruct the jury of that fact. See Rule 105, Ala. R.Evid.
In spite of Common Sense's arguments to the contrary, the admission of the Lawman Armor evidence was not harmless error. The evidence of the preliminary injunction in Lawman Armor was the linchpin of Common Sense's breach-of-contract case against Winner. During direct examination of its first witness, counsel for Common Sense questioned him about Lawman Armor. In fact, the evidence of the Lawman Armor lawsuit was arguably the only evidence that tied together the evidence of a breach of contract by Winner to indicate that Winner might have secretly intended to undermine Common Sense's patent. We do not view the other contract violations by Winner to be so overwhelming that the jury had no choice but to rule in Common Sense's favor. Lawman Armor was so important to Common Sense's case that, even after the trial court entered a judgment as a matter of law for Winner as to the fraud claim, and in response to Winner's motion to exclude the Lawman Armor evidence from the jury's consideration, Common Sense changed its argument to claim that that evidence was relevant for proving that Winner had acted in bad faith. The fact that the Lawman Armor evidence may have been admissible in a fraud action does not necessarily make it admissible in a breach-of-contract action. Rule 105, Ala.R.Evid.[2] The Lawman Armor case was still essential to Common Sense in its attempt to prove that Winner as a business was of a "bad character," the very improper purpose Rule 404(b), Ala. R.Evid., was devised to prohibit.

Conclusion
The trial court erred in admitting the Lawman Armor evidence in the trial of Common Sense's breach-of-contract claim against Winner. Its admission was prejudicial to Winner. Rule 404(b), Ala.R.Evid. Therefore, the trial court exceeded its discretion in not properly instructing the jury that the evidence of the Lawman Armor lawsuit should not be considered in the breach-of-contract action, as required by Rule 105, Ala.R.Evid. We reverse the circuit court's judgment as to the breach-of-contract claim and remand the case for the trial court to hold a new trial on the breach-of-contract claim, at which evidence of the Lawman Armor lawsuit will not be admitted.
REVERSED AND REMANDED.
MOORE, C.J., and HOUSTON and STUART, JJ., concur.
SEE, LYONS, and WOODALL, JJ., concur specially.
JOHNSTONE and HARWOOD, JJ., dissent.
SEE, Justice (concurring specially).
I concur. I write only to note that whatever may be the vitality of Penn & Co. v. Smith, Grainger & Cantrell, 104 Ala. 445, 18 So. 38 (1895), I agree with Justice Lyons that this case is distinguishable from it.
*1094 LYONS, Justice (concurring specially).
The dissenting opinion of Justice Harwood relies upon Penn & Co. v. Smith, Grainger & Cantrell, 104 Ala. 445, 18 So. 38 (1894), as authority for allowing the admission of evidence of Winner's having been enjoined in patent-infringement litigation brought by the manufacturer of a product different from the product that is the basis of this action. The patent-infringement litigation was brought several years after this action was filed. As I read Penn & Co., it allows evidence of contemporaneous circumstances giving rise to an ulterior motive, even if that evidence shows evil intent. In Penn & Co., the buyer of flour had the right to reject the shipment if the shipment failed to correspond to samples that had been displayed to the buyer before the sale. The buyer rejected the shipment, and the seller sold it to a third party at a loss. The seller sued the buyer and, in addition to offering evidence indicating that the shipment was compatible with the sample, the seller also offered evidence of a decline in the price of flour between the time the order was placed and the time of shipment. This evidence was offered to show an ulterior motive on the buyer's part for not accepting the shipment. Such conduct would establish breach of the duty to act in good faith implied in all contracts. Penn & Co. in effect holds that the buyer, by denying that the shipment was compatible with the sample, opened the door to proof of other contemporaneous circumstances that might motivate the buyer to assert the incompatibility, thereby attacking his credibility. Of course, absent evidence by the seller that the flour shipped was compatible with the sample, evidence of declining flour prices alone would not establish a breach of contract.
Common Sense sued Winner, alleging that Winner had breached its duty of good faith and due diligence in marketing Common Sense's Door Club. Winner denied liability, stating that the real reason for the disappointing sales was customer dissatisfaction. By denying liability, Winner, under Penn & Co., opened the door to evidence attempting to show that it had an ulterior motive for not diligently marketing the Door Club. Common Sense did just that, offering evidence of Winner's clandestine efforts to obtain a patent for a modified product that would perform the same function as the Door Club. According to Common Sense, Winner's failure to market the Door Club was motivated not by customer dissatisfaction, but by Winner's desire to compete with the Door Club with its own product. This evidence, even if it showed evil intent, is admissible under Penn & Co. Common Sense's evidence of Winner's attempts to introduce a competing product is the equivalent of the seller's evidence of falling prices in the flour market in Penn & Co. Both evidentiary offerings negate the position taken by the party denying liability, thereby attacking that party's credibility.
The Lawman Armor injunction order related to Winner's activities in connection with a third party that manufactured a product unrelated to the Door Club and with whom Winner did not have a relationship comparable to the one it had with Common Sense. Allowing the introduction of the Lawman Armor injunction order injected into the case matters unrelated to proof by Common Sense of contemporaneous circumstances that would give rise to a finding that Winner had an ulterior motive, a finding that would undermine Winner's defense that the sales of the Door Club were not as expected because of customer dissatisfaction with the product.
We could expand the rule of Penn & Co. to allow the admission of pattern-and-practice evidence supportive of a claim that a party acted with an ulterior motive that is *1095 inconsistent with dealing in good faith. Thus, in Penn & Co., the seller, in addition to offering evidence of falling prices in the flour market, could offer, if available, evidence of the buyer's rejection during a declining market of shipments of sugar or cotton or corn in unrelated transactions with third parties on the same ground of incompatibility with the samples the buyer had been shown. Of course, if we expand the rule of Penn & Co. so as to recognize the admissibility of pattern-and-practice evidence in contract actions, we should expressly overrule Western Union Telegraph Co. v. Rowell, 153 Ala. 295, 45 So. 73 (1907), in which this Court held as follows:
"In actions ex contractu (for the breach of a contract) the motive or intent of the defendant will not in general be considered. 12 Am. & Eng. Ency. Law, 20, and notes 5 and 6 to the text; 13 Cyc. div. (F) 113; International Ocean Telegraph Co. v. Saunders, 32 Fla. 434, 14 South. 148, 21 L.R.A. 810 [(1893)]; Field on Damages, § 94; 3 Parsons on Cont. 180; Lawson, Cont. § 463. The only exception to the rule seems to be in actions for breach of contract of marriage."
153 Ala. at 309, 45 So. at 78. While motive is an expressly recognized exception to the preclusion of evidence of other acts in Rule 404(b), Ala. R. Evid., settled principles of contract law justify withholding the application of Rule 404(b) to this action, which sounds solely in contract. See Unit Drilling Co. v. Enron Oil & Gas Co., 108 F.3d 1186 (10th Cir.1997), in which the trial court's refusal to allow evidence under Rule 404(b), Fed.R.Evid., indicating that Enron frequently breached its contracts was upheld. The court in Unit Drilling observed: "The probative value of the [pattern-and-practice] evidence was not great because Enron's motive is not at issue in a breach of contract case." Id. at 1194 (emphasis added).
Once we recognized a field of operation for pattern-and-practice evidence relating to dealings with third parties in contract actions, we could not logically limit the admissibility of such evidence to only those contract actions in which the agreement expressly requires performance in good faith, as is the case in the contract before us. An express covenant of good faith merely states what is otherwise implied. See Tanner v. Church's Fried Chicken, Inc., 582 So.2d 449, 451 (Ala.1991), in which this Court held: "`The good faith clause in the present Contract has the same effect and operation as the obligation of good faith that is implied in all contracts under common law and in sales contracts under Alabama's UCC.'" (Quoting the trial court's order and agreeing with its holding.) Moreover, an obligation to perform in good faith is "`directive rather than remedial and [is] not actionable absent an identifiable breach in the performance of specific terms of the contract.'" Id. Justifying the admissibility of pattern-and-practice evidence based on the obligation of good faith inherent in all contracts, an obligation that in itself is not actionable, offers the potential for far greater mischief than justice. I therefore cannot subscribe to the admissibility of pattern-and-practice evidence in contract actions grounded upon the alleged failure to perform pursuant to either the express or implied obligation to act in good faith.
The main opinion concludes that the trial court "exceeded its discretion in not properly instructing the jury that the evidence of the Lawman Armor lawsuit should not be considered in the breach-of-contract action." 863 So.2d at 1093. Winner's motion for a limiting instruction was excessively broad in that it sought to disregard matters in addition to evidence regarding other lawsuits, some of which I consider admissible. For example, the motion for a limiting instruction requested *1096 that the jury be instructed that evidence concerning modifications to the Door Club patent was not relevant to the breach-of-contract claim. I therefore cannot conclude that the trial court erred to reversal in overruling the motion for a limiting instruction.
However, the motion for a limiting instruction is not the only basis upon which Winner preserved error. Although I agree with Justice Johnstone and Justice Harwood as to the problem with error preservation in connection with the admissibility of the pattern evidence as to the fraud claim, the record reflects that counsel for Winner, after the fraud claim had been eliminated, by a separate oral motion requested that the exhibit relating to the Lawman Armor lawsuit "be withdrawn from going back to the jury" on the ground that it "only goes to pattern and practice of fraudulent behavior." Counsel for Winner argued, "If it's pattern and practice evidence, only pattern and practice is a fraud." Continuing, counsel for Winner stated, "If the fraud case is gone, there's no pattern and practice evidence that should be admitted." After further colloquy, the trial court stated, "Well, I'm going to charge the jury as to the law on breach of contract and the exhibit is going to stay. They are admitted. They are there." I consider the foregoing sufficient to constitute a denial of the oral motion to exclude the exhibit dealing with the Lawman Armor lawsuit and thereby to preserve error with respect to consideration by the jury of matters relating to the Lawman Armor lawsuit in the context of the breach-of-contract claim.
I therefore concur specially.
WOODALL, J., concurs.
JOHNSTONE, Justice (dissenting).
I respectfully dissent. Winner has not preserved reversible error. Therefore, I respectfully submit that we should affirm.
First, Winner did not effectively object to the Lawman Armor lawsuit evidence. At trial, Winner did not object to the offer of the order issued in Lawman Armor until after that order had already been admitted into evidence by the judge in the case now before us. After the trial judge overruled that tardy objection, Winner did not move to strike that exhibit. Thereafter, practically all of the findings adverse to Winner in that Lawman Armor exhibit were read into evidence through Winner's vice president, secretary, and general counsel Mr. Hornbostel testifying as an adverse witness before the jury, either without any objection, or without any stated grounds for an objection, or without any statement of the grounds argued before us on this appeal, or with only a tardy objection. Any error by the trial court in overruling any few apt and timely objections was rendered harmless and therefore not reversible, Rule 45, Ala. R.App. P., by the prior or subsequent admission of evidence to like effect without apt and timely objection. Green v. Standard Fire Ins. of Alabama, 398 So.2d 671 (Ala.1981); Schoen v. Schoen, 271 Ala. 156, 123 So.2d 20 (1960).
Second, Winner did not request an appropriate limiting instruction. The Lawman Armor evidence was admissible for two independent reasonsfirst, to prove pattern and practice for the fraud claim, and, second, to prove motive and intent to violate the express good-faith provisions of Winner's contract with Common Sense. The law did not require the trial judge to articulate his reasons for admitting the evidence and did not limit him to any reason he did articulate. "The trial court has no legal duty in Alabama to state its reasons for any ruling on evidence that it makes...." C. Gamble, McElroy's Alabama Evidence § 428.01 (5th ed.1996). In fact, in the case before us, the trial judge articulated both reasonsthe first during *1097 the introduction of evidence, and the second during the closing arguments. After the trial judge granted Winner's motion for a judgment as a matter of law on the fraud claim, the Lawman Armor evidence was still probative on the bad faith issue of the contract claim. Yet the only instruction Winner requested on this topic was that the jury disregard the Lawman Armor evidence for all purposes. Because Winner was not entitled to such an instruction, the trial judge did not err in refusing it. Winner did not request that the trial judge instruct the jury to limit its consideration of the Lawman Armor evidence to the bad faith issue of the contract claim. Therefore, as Rule 105, Ala. R. Evid., expressly requires a party seeking a limiting instruction to request it, the trial judge did not err in omitting to issue one to this effect.
HARWOOD, J., concurs.
HARWOOD, Justice (dissenting).
I concur in Justice Johnstone's dissent, but write additionally in dissent as follows:
The breach-of-contract claim asserted by Common Sense was not premised solely on objectively ascertainable facts relating to concretely defined contract terms. Rather, the "Duties of Licensee," set forth in paragraph 6 of the "Exclusive License Agreement" entered into by Common Sense as "Licensor" and Winner as "Licensee," lists three specific things Winner "covenant[ed] and agree[d]" it would do. Two are pertinent to Common Sense's present breach-of-contract claim:
"(a) The Licensee shall in good faith and with due diligence conduct all manufacturing, marketing, and other operations respecting the Invention in accordance with the best business customs of its industry.
"(b) The Licensee shall use its best efforts to promote sales of the Invention."
At trial, Common Sense presented evidence of various acts or omissions on Winner's part relating to matters covered by their license agreement, which Common Sense contended Winner did, or left undone, in bad faith and for its own interest in derogation of the interests of Common Sense. Winner, on the other hand, presented competing evidence in an attempt to show that its true motive and intent in each instance was benign and that each of its challenged acts and omissions was attended by only good faith.
As Justice Lyons notes in his special writing, this Court held in Tanner v. Church's Fried Chicken, Inc., 582 So.2d 449, 451 (Ala.1991), that the breach of a contractual duty of good faith is not actionable "`absent an identifiable breach in the performance of the specific terms of the contract.'" 582 So.2d at 451. As this Court further explained in Lake Martin/Alabama Power Licensee Ass'n, Inc. v. Alabama Power Co., 601 So.2d 942, 945 (Ala.1992):
"This Court has explicitly held that there is no good faith contractual cause of action, Tanner v. Church's Fried Chicken, [582 So.2d 449 (Ala.1991)]; Government Street Lumber Co. v. Am-South Bank, [553 So.2d 68 (Ala.1989)]; that means that bad faith is not actionable absent an identifiable breach in the performance of specific terms of the contract. There is no identifiable breach in the performance of the specific terms of the license agreement by Alabama Power; and there is no contractual cause of action for breach of an implied duty of good faith that nebulously hovers over the contracting parties, free from the specific terms of the contract."
The jury in this case was called upon to determine whether, in any particular instance, Winner had conducted its activities "in good faith and with due diligence," *1098 and/or had used its "best efforts." The concepts of "good faith," "due diligence," and "best efforts," linked evidentially by Common Sense to "specific terms of the [license agreement]" and so argued to the jury by Common Sense, required the jury to assess the subjective issue whether Winner's motives and intentions were as Winner claimed, or as Common Sense portrayed them. Thus, certain aspects of the breach-of-contract claim rendered relevant evidence tending to show the motive and intent with which Winner acted in those matters.
In its briefs to this Court, Winner does not assert that Common Sense's breach-of-contract claim, implicating the contractual duty of good faith, fails to state a cause of action upon which relief could be granted, or otherwise was not a viable, legally cognizable claim. Rather, it argues only, as it restates in its reply brief, that "intent is not and has never been an essential element of a claim for breach of the contractual duty of good faith"; that Common Sense has failed to state how evidence concerning the Lawman Armor case "is relevant to Winner's motive and intent in its breach of a contractual duty of good faith"; that the Lawman Armor lawsuit "is in no way probative of plaintiff's claim for breach of the contractual duty of bad faith"; and that "[t]here is no correlation between the actions of Winner in the Lawman Armor case and any intent or motive to breach the contractual duty of good faith in the present case."
As Justice Johnstone explains, no error was preserved with regard to the challenged admission into evidence of the Lawman Armor preliminary-injunction order. Therefore, Winner's first issue on appeal, phrased by it as "[w]hether the Circuit Court committed reversible error by erroneously allowing the admission" of that order, must be answered in the negative. (Emphasis supplied.) Winner's statement of the remaining issue on appeal is phrased as whether the court committed reversible error "[1] by allowing the jury to consider [in determining the breach-of-contract claim] irrelevant evidence of fraud and [2] by failing to give a limiting jury instruction regarding Plaintiff's fraud claim once a [judgment as a matter of law] on Plaintiff's fraud claim was granted in favor of Winner?" The first part of this issue is addressed in Justice Johnstone's dissent. The second part, relating to the trial court's failure to give a limiting instruction once the fraud claim was eliminated from the case, forms the basis of the reversal ordered by the main opinion. That opinion concludes, without citation to authority, that once the fraud claim was stricken, the Lawman Armor order "was no longer relevant." 863 So.2d at 1093. Given the highly subjective nature of the breach-of-contract claim, I respectfully disagree.
"The motive inducing a party to a breach of contract will not involve him in liability for exemplary or punitive damages. If there is a breach, the law fixes the measure of recovery, and whether the breach was accidental, or willful and intentional, is not material. 2 Sedg. Dam. (8th Ed.) § 603. But when the causes producing the breach are a matter of inquiry; when the party in default justifies it for a particular cause or reason, and the existence of that cause of reason is the matter of dispute, the evidence of the existence of another cause to which the default may be attributed, though it may involve him in an evil intent, is relevant and admissible. Relevant and admissible, not to fix a liability for damages beyond the legal standard, but for the purpose of ascertaining what was the real cause of the default."
Penn & Co. v. Smith, Grainger & Cantrell, 104 Ala. 445, 449-50, 18 So. 38, 40 (1894). (Although Penn & Co. is of ancient vintage, *1099 it has never been questioned or overruled.) As Justice Johnstone points out, the limiting jury instruction requested by Winner would have required the jury to disregard the Lawman Armor evidence totally. That case, like some of the alleged bad-faith aspects of the present case, involved an attempted use by Winner of a competing patent to provide an "end run" around an existing patent. In both instances, Winner's patent attorney, Robert Vickers, was recruited to design the second-generation patent. Accordingly, although a limiting instruction restricting narrowly the use for which the jury might consider the Lawman Armor order already in evidence might have been appropriate, the trial judge could have rejected a blanket instruction prohibiting any consideration of it without committing reversible error.
NOTES
[1] Common Sense presented evidence at trial indicating that Winner's production costs may have been closer to three dollars.
[2] But see Penn & Co. v. Smith, Grainger & Cantrell, 104 Ala. 445, 18 So. 38 (Ala.1894), for the proposition that evidence of evil intent would be admissible if Winner sought to justify its default "for a particular cause or reason, and the existence of that cause or reason is the matter of dispute...." 104 Ala. at 449, 18 So. at 40. Nevertheless, the admission of the Lawman Armor evidence went too far by allowing not merely evidence of motive but evidence of motive based on actions not contemporaneous with the alleged breach by Winner, involving Winner's contract with a third party.