L. CHARLES WRIGHT, Retired Appellate Judge.
Joe Cromeans appeals from a judgment awarding him damages for past-due rent, interest, and attorney fees.
Cromeans owns Jackson Square Shopping Center, which consists of approximately 25 rental spaces. In 1989 William Bennett became interested in leasing property from Cromeans. Cromeans agreed that Bennett could lease the property if Bennett could get a guarantor of the lease. Tony Kaschak agreed to sign as Bennett’s guarantor.
Cromeans and Parkway Meats, Inc., Bennett’s corporation, executed a lease, wherein Parkway Meats would occupy Units 9 and 10 of the shopping center. Bennett, Bennett’s wife, and Kaschak signed the lease as guarantors and on the same day signed a separate guaranty of lease agreement. The monthly rental rate on Unit 9 was $1,130.21. The monthly rental rate on Unit 10 was $904.17. The total monthly rent equaled $2,034.38.
Bennett paid Cromeans a deposit equal to one month’s rent, which was to be applied to the last month’s rent. Cromeans agreed to give Bennett two months’ free rent. The first rent payment was due on June 1, 1990.
Bennett’s business was not successful. He was forced to close the business in December 1990. He kept equipment in the building until February 1991. Cromeans suggested that Bennett sublet the property. Bennett stated that he would rather Cromeans lease the property to someone else.
On January 18, 1991, Cromeans entered into a new lease agreement with R & R Foods, Inc., on Unit 10, for a monthly rental rate of $991.67. The first payment was not due until October 1,1991. Cromeans agreed to give R & R Foods the free rent as an inducement to enter into the lease agreement. In March 1991, Cromeans entered into a new lease agreement with Peh Kiang Chia on Unit 9, for a monthly rental rate of $1,239.58. As an inducement, Cromeans gave Peh Kiang Chia free rent until September 1,1991.
Bennett made a total of four monthly rental payments totalling $8,137.52. He performed certain work for Cromeans and gave certain goods and materials to Cromeans, for which he received a credit against rents in the sum of $5,358.83. Cromeans never told Bennett that he would forgive the rent owed. They never had a discussion about how much Bennett owed Cromeans.
Cromeans filed an action against the Bennetts, Parkway Meats, and Kaschak for the difference between the amount that Bennett paid on the lease of Units 9 and 10 and the amount that should have been paid on those units until the time the new lessees began paying rent.
Following oral proceedings, the trial court entered an order awarding Cromeans $5,870.35 (which included an attorney fee of *196 $2,500), plus interest “to be determined,” and costs. Cromeans filed a motion to alter, amend, or vacate the judgment, alleging the inadequacy of the judgment. The motion was deemed denied pursuant to Rule 59.1, Ala.R.Civ.P. Cromeans appeals.
In its final order, the trial court made the following finding:
“The Court determines that the actions of Cromeans between the end of December 1990 and 29 March 1991 constitute acceptance of the abandonment of the property by the tenants and re-entry by the landlord (Cromeans) so as to terminate the lease agreement herein.”
The effect of the trial court’s finding was that the Bennetts and Kaschak were responsible for rent on Unit 9 from July 1, 1990, through March 29,1991, and on Unit 10 from July 1, 1990, through January 18,1991. The trial court found the Bennetts and Kaschak responsible for rent until the time that Cromeans entered into the agreements with the new lessees.
Cromeans contends that he was entitled to rent on Unit 9 from June 1, 1990, through September 1,1991, and on Unit 10 from June 1,1990, through October 1,1991. He argues that he was entitled to receive rent until the day the new lessees were obligated to begin paying rent.
When a tenant abandons the leased premises prior to the expiration of the term agreed upon in the lease, it is the lessor’s option to allow the premises to remain vacant and sue the tenant on the contract; or the lessor may end the lease by an unequivocal re-entry onto the premises. Crestline Center v. Hinton, 567 So.2d 393 (Ala.Civ.App.1990).
There is no duty on the lessor to re-let the premises for the benefit of the lessee when the lessee has abandoned the leased premises in violation of the lease. Crestline Center.
If this were a simple breach of a lease agreement, the rule articulated in Crestline Center would apply. However, the execution of the guaranty agreement makes the disposition of this case more difficult. The trial court failed to address the guaranty agreement and its ramifications on the actions of the parties. We must, therefore, address the rules governing the interpretation and construction of a guaranty agreement.
The same rules governing the interpretation and construction of contracts are applicable in resolving questions concerning the interpretation and construction of a guaranty agreement. Government Street Lumber Co. v. AmSouth Bank, 553 So.2d 68 (Ala.1989). When the terms of the agreement are unambiguous, it is the duty of the trial court to determine the meaning of the agreement. Government Street Lumber Co. “A guarantor cannot defeat the plain terms of the agreement by stating that he did not intend to obligate himself to the provisions of the guaranty agreement.” Government Street Lumber Co. The defenses and claims of a lessee cannot be used as defenses for the guarantor when the guarantor has entered into an absolute guaranty with the landlord. Government Street Lumber Co. “Absent fraud in the inducement, an absolute guaranty will be enforced according to its terms.” Government Street Lumber Co.
The record does not present any evidence of fraud in the inducement, nor does Kaschak allege that the guaranty agreement is ambiguous. (The Bennetts failed to respond to Cromeans’s appeal. Kaschak filed the only brief in response.) We must, therefore, look to the terms of the guaranty agreement.
Section 1 of the guaranty agreement provides:
“Guarantor hereby unconditionally and absolutely guarantees to Lessor the prompt and full payment of rent and all other sums due to Lessor under said lease and the prompt and complete performance of all covenants contained in said lease on the Lessee’s part to be performed. Guarantor agrees to indemnify and hold Lessor harmless from any loss, costs or damages arising out of Lessee’s failure to pay the aforesaid rent and other sums and/or the Lessee’s failure to perform any of the aforesaid covenants.”
(Emphasis added.)
Section 3 of the agreement provides, in pertinent part, the following:
*197 “Guarantor agrees that a release or settlement with one or more of the persons or entities comprising Guarantor or Lessee shall not release any other Guarantor, and all such remaining Guarantors shall remain jointly and severally liable as though they were the only persons or entities executing this Guaranty.”
Section 4 of the agreement provides, in part:
“The liability of Guarantor shall not be affected by any repossession of the leased premises by Lessor.”
Kaschak concedes that he is liable to Cromeans for the unpaid rent until the time that Cromeans entered into the lease agreements with the new lessees. He argues, however, that he is not responsible for the “five months of free rent” which Cromeans gave to the new lessees: He insists that his liability under the terms of the guaranty agreement “cannot possibly exceed the scope and extent of liability of the original debtor.”
As a general rule, a guarantor is discharged by operation of law from further liability by any act which extinguishes the principal obligation. 38 C.J.S. Guaranty § 69 (1943). However, “[w]here the guaranty is an absolute one for rent for premises leased for a certain business, the guarantor is not discharged because the tenant is prevented from carrying on such business.” 38 C.J.S. Guaranty § 69 (1943).
The terms of the guaranty agreement are clear and unambiguous. Kaschak agreed that his liability would “not be affected by any repossession of the leased premises by the Lessor.” He .further agreed that he would “indemnify and hold Lessor harmless from any loss, costs or damages arising out of Lessee’s failure to pay the aforesaid rent....”
Cromeans sought to recover only for rents and other expenses through September 1, 1991, on Unit 9 and through October 1, 1991, on Unit 10. Kaschak asserts that he should not be liable for the months of free rent that Cromeans gave to the new lessees. The testimony is clear that if Cromeans had not waived the rents for the requisite months, then he would not have been able to consummate the new leases on Units 9 and 10, the effect of which would have been to substantially increase the liability of the Bennetts and Kaschak.
We find that the trial court erred in failing to consider and give legal effect to the clear and certain language of the guaranty agreement. The judgment is reversed and the cause remanded for the trial court to recalculate the damages owed to Cromeans in view of this court’s opinion.
Cromeans’s request for attorney fees on appeal is granted in the amount of $500.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
REVERSED AND REMANDED WITH INSTRUCTIONS.
All the Judges concur.